PEARL P. HOLT *et al.* *v.* JOHN F. HAMLIN *et al.*

(*Jackson.* April Term, 1908.)

1. **PARTITION.** Owner of life estate is not entitled to partition as against remaindermen, when.

An individual owner of a life estate in land is not entitled, under our statutes, to maintain a bill against the owners in remainder or reversion for partition in kind, nor for a sale for partition. (*Post, pp.* 499-521.)

Acts cited historically: Acts 1787, ch. 17; Acts 1789, ch. 24; Acts 1799, ch. 11; Acts 1815, ch. 123; Acts 1817, ch. 41; Acts 1823, ch. 37; Acts 1827, ch. 54; Acts 1829, ch. 35; Acts 1853-54, ch. 48.

Code cited and construed: Secs. 5010-5012, 5040, 5041, 5042, 5054-5057 (S.); secs. 3993-3995, 4022-4024, 4036-4039 (M. & V.); secs. 3262-3264, 3291, 3292, 3293, 3305-3308 (T. & S. and 1858).

Cases cited and approved: Freeman v. Freeman, 9 Heisk., 301; Rutherford v. Rutherford, 116 Tenn., 383-386.

2. **SAME.** Same. Life tenant cannot force sale of remainder for partition, though he may consent to it, when.

Our statutes do not contemplate a suit by the life tenant of the whole premises against the owners in remainder or reversion for the purpose of effecting a sale, in order that the life tenant may have his life estate valued and paid to him in money. The right of one of the owners in remainder or reversion to maintain a bill, under our statutes, against his cotenants in remainder or reversion for a partition in kind or for a sale for partition of the remainder or reversion, or for a sale of the whole estate, both life and remainder or reversion, where the life tenant is made a party, and consents thereto, or the court adjudges it to his interest, where it is incapable of consenting, or where he is unknown, does not give such life tenant

Holt v. Hamlin.

an absolute right to force a sale against the wishes of the owners in remainder or reversion. (*Post, pp.* 514-518, 520-522.)

Acts cited:   Acts 1907, ch. 403.

Code cited and construed:   Secs. 5040, 5041, 5054-5057 (S.); secs. 4022, 4023, 4036-4039 (M. & V.); secs. 3291, 3292, 3305-3308 (T. & S. and 1858).

Cases cited and distinguished:   Bierce v. James, 87 Tenn., 538; Rutherford v. Rutherford, 116 Tenn., 383.

3. **LIFE ESTATES.** Use of annuity and life tables and the condition and circumstances in ascertaining their value.

While annuity tables or life tables are admissible on an issue as to the present value of a life estate, they are not conclusive as to the probable duration of the life tenant's existence. The age, habits, and constitution of the life tenant must be considered. The value of the life estate must be determined by considering, in addition to the expectancy, the present worth of the money in connection with the risks attending the lending thereof, the payment of taxes, etc. (*Post, pp.* 518-520.)

Case cited and approved:   Carnes v. Polk, 5 Heisk., 244.

4. **CHANCERY JURISDICTION.** Inherent power to convert estates of persons under disability for their manifest interest, when.

Chancery has inherent power and jurisdiction to convert the estates of persons under disability when to their manifest interest, and may decree a sale of their land for reinvestment of the proceeds, where it appears that by reason of the unproductive and depreciative character of the land, it is to their manifest interest to do so. (*Post, pp.* 522, 523.)

Cases cited and approved:   Brown's Case, 8 Humph., 200; Martin v. Keeton, 10 Humph., 539; Winchester v. Winchester, 1 Head, 460, 491, 492; Thompson v. Mebane, 4 Heisk., 373, 377; Talbot v. Provine, 7 Bax., 509; Gray v. Barnard, 1 Tenn. Chy., 298, 301; Hurt v. Long, 90 Tenn., 445; Lenow v. Arrington, 111 Tenn., 720.

120 Tenn—32

Holt v. Hamlin.

5. **CHANCERY PLEADING.** Demurrer as to part of relief is not good, when.

A demurrer which does not go to the whole bill, or to any specific severable part thereof, but only to a part of the relief asked, is not sustainable. (*Post, p.* 522.)

6. **CHANCERY PLEADING AND PRACTICE.** Statute requiring married woman to be made defendant to suit for sale of land for reinvestment is merely directory, when.

A married woman owning a life estate in certain land in which her infant child owns the remainder estate may as testamentary guardian of her said child maintain a bill, in which her husband joins, against her said ward and child for the sale of the land for reinvestment for the manifest interest of herself and ward, where there is no antagonism between her interests and those of her husband in respect to the propriety of a sale of her interest. It is no objection to the bill that she was not made a defendant. The requirement of the statute that she be made a party defendant to such bill is merely directory, and not mandatory. The statute also requires the guardian to be complainant in such a suit against the ward. (*Post, pp.* 522-524.)

Cases cited and construed: Sec. 5073 (S.); sec. 4055 (M. & V.); sec. 3324 (T. & S. and 1858).

### FROM SHELBY.

Appeal from the Chancery Court of Shelby County.— F. H. HEISKELL, Chancellor.

J. P. HOLT, for complainants.

WASSELL RANDOLPH, guardian *ad litem,* and ROBT. M. BEATTIE, for defendants.

MR. JUSTICE NEIL delivered the opinion of the Court.

On the 27th of July, 1907, the complainant, as guardian of her child, the defendant John F. Hamlin, filed her original bill against said John F. Hamlin, a child aged nine years, and Blanche Hamlin Kruger and her husband, E. T. Kruger. The complainant was joined by her husband, J. P. Holt, as a formal party.

The bill alleged that on the 29th of November, 1899, John F. Hamlin, the former husband of the complainant and the father of the defendant John F. Hamlin, Jr., died in Shelby county, having first made his last will and testament, by which he devised to the complainant, Mrs. Holt, then Mrs. Hamlin, a life estate in all of his realty, and made her testamentary guardian of his two children, the said John F. Hamlin, Jr., and the defendant Mrs. Blanche Hamlin Kruger, who was a child of testator by a former marriage.

It was alleged that testator owned four pieces of real estate: First, a farm in Mississippi, near the town of Lula, in that State; second, a certain lot in the city of Memphis, containing four houses, estimated at the value of $7,500; and thirdly, a tract of land—two tracts of land adjoining each other—called the "Oakville Farm," the two together aggregating about 435 acres.

It is alleged that the defendants own no realty, other than their remainder interests in the lands above mentioned, and that they have no personal property.

It is alleged that the Oakville Farm is worth about $8,000, and is unincumbered, except for the taxes for

1907, which were not due when the bill was filed; that it contains about one hundred acres of timbered land, but that the timber is only of moderate value; that there are seven cottages on this land for tenants, five of which have been placed there by the complainant since the death of her former husband; and that these cottages are supplied with wells and outhouses.

The bill continues:

"But said property is unproductive, and its decay and dilapidation far outgrows the little income it brings. The land is not fertile, except a very small portion of it, and the class of tenants to be obtained in the section of the country where it is located are not desirable, being mostly negroes of the poorest character, who have to be 'furnished' from year to year—an arrangement which is both hazardous and unremunerative, and requiring constant supervision. As a fair instance of the loss of maintaining said place, complainant shows that she has spent upon it in the year beginning with the spring of 1906 and ending in the spring of 1907 over the sum of $600, whereas the income from said place last year (gross) was $520. Complainant now shows that it is manifestly to the interest of said defendants that said farm property known as the 'Oakville Farm' be sold, and that the proceeds thereof be reinvested in better paying real estate. She is advised by competent authority that said farm property may be more advantageously disposed of in tracts of smaller proportions, into which the farm may be subdivided."

On the 31st of August, 1907, by leave of the chancellor, complainant made the following amendment to the bill:

"Complainant is also advised that under the circumstances herein recited she is entitled to have a partition of her life estate in the said Oakville Farm property from that of the remainder interests of the defendants herein, and that to this end she is entitled to have her life interest valued and computed according to the tables provided for such cases, and set apart to her out of the proceeds of the sale of same. Complainant's interest, and the defendants' interests are in common. A sale of either without the other would bring comparatively nothing. Complainant believes that no sale could be had of either estate by itself. It is to their joint interest that it be sold together. Complainant would amend the prayer of her bill hereinbefore filed by praying that the court may, in the general reference to be had under this bill, direct the master to also ascertain the value of her life estate in said Oakville Farm property, at her present age, complainant being now thirty-four years, or that being her nearest (next) birthday. She prays that the value thereof, when ascertained, may by way of partition be set apart and paid to her out of the fund arising from the sale of same, and that the fund going to the defendants be reinvested as prayed in the bill, and held under her guardianship for their exclusive use. She prays as in her bill and for all other proper relief."

The prayer to the original bill was that the Oakville Farm should be sold and the proceeds invested in other paying property, reserving in such substituted property the life estate of the complainant as impressed upon the land by the will of her former husband. There was also a prayer for general relief.

On the 11th of November, 1907, the complainant was permitted to make an additional amendment to the bill, in which she set out the following allegations:

"With respect to the situation of the lands sought to be sold herein, complainant would show to the court: That said farm is situated about 10½ miles from the center of the city of Memphis, and that it is not in the line of the growth of the city, being separated therefrom by Nonconnah creek, a stream which runs through an extensive bottom and which is subject to overflow at many times during the year. That by reason of the rough and forbidding topographical features of the country lying between the city of Memphis and said farm it is most unlikely that the land will become valuable from such source, at least for a great many years to come. That complainant has advised with some of the best judges of the values and character of real estate in Shelby county, with a view of ascertaining what is best to do with said farm, and has been advised that there is no prospect of an increase in the value of same, if at all, for many years. She would show that said land has not increased in market value for twenty or thirty years, but is worth now about what it was over twenty years

ago. If any change has taken place, it has depreciated on account of the washing of the hill lands and increased poverty of the soil. This depreciation is continuous from these and other causes. Complainant, from advice of others who are competent to advise, and from her own experiences with the place, regards it to the advantage and the best interests of the defendants and herself that the land be sold, and so avers. It should be sold, whether her life estate in same is partitioned from the remainders or not. But complainant, believing that she has a right to have her said estate set apart to her out of the proceeds of said sale, still asks that same be done. She would also show the court that she is maintaining and educating the minor defendant, John, out of the income of the estate, and, although the defendant Blanche Kruger is now past her majority and is married, complainant still contributes to the said Blanche the sum of $60 monthly in cash. This she has been doing since her marriage and before. This sum is not an inconsiderable part of complainant's net income. Complainant would further represent to the court that she has filed this bill, being joined by her husband, in her representative capacity as guardian of the minor, but with respect to the relief she asks by way of the partition of her life estate from those of the remainder she asks that said bill be considered as also filed in her individual capacity and for herself, being, as aforesaid, joined by her husband."

To the foregoing bill, as amended, the defendants, Kru-

ger and wife, filed a demurrer, stating as ground thereof the following:

"Because the complainants are not entitled to the relief they pray, nor to any relief; the matters contained in their bill and amended bill not being sufficient grounds for making the sale sought by the bill and amended bill, nor for the distribution of the proceeds in the manner sought by the amended bill—there being only one life tenant, and no sale for distribution of the proceeds, instead of sale for reinvestment, being either necessary or proper."

Mr. Wassell Randolph was appointed guardian *ad litem* for the minor defendant and interposed seven grounds of demurrer, all of which were sustained by the chancellor, except the first and second.

No complaint is made of the action of the chancellor in overruling the first and second grounds of demurrer, and they need not be further noticed. The remaining grounds are as follows:

"(3) Because, if treated as a suit to have the property sold for reinvestment, the owner of the life estate therein, who is a married woman, is a necessary party defendant.

"(4)   Because, if treated as a suit for partition, the bill as amended does not allege that a partition in kind cannot be made, or that it would be to the advantage of the parties that the property should be sold, rather than partitioned in kind.

"(5)   Because, if treated as a suit for reinvestment, a

sale for the purpose of segregating the life estate from the remainder interest is not authorized.

"(6)   Because, if treated as a suit for partition, no authority is given to a single owner of the entire life estate to ask a partition by division or sale of the life estate from the remainder interest.

"(7)   Because, if treated as a suit for partition, the allegations in the bill as amended are not sufficient to justify a sale of the remainder interest."

The chancellor, as already stated, sustained these several grounds of demurrer, also the demurrer filed by Kruger and wife and dismissed the complainant's bill. From this decree the complainant has appealed to this court, and has here assigned errors.

Without directly referring to the several grounds of demurrer at present, we shall deal with the propositions which they contain.

The chief objection urged against the bill in the argument at the bar, and in the briefs of the guardian *ad litem* and of the attorney for Kruger and wife, is that, in so far as it is a bill to obtain a sale for division, it cannot be sustained, because it is filed by a life tenant, who owns a life estate in the whole of the premises.

In order to a proper consideration of this question, it is necessary—or will at least be found useful—to make a rapid review of our statutes that were in force, upon the subject of partition and sales for partition, or the division of proceeds, prior to the enactment of the Code of 1858, and to note the new features added by the

Code so far as they bear upon the particular question we have in hand.

By chapter 17 of the Acts of 1787 it was provided that the judges of circuit and chancery courts should be empowered to grant a partition "on petition of one or more persons claiming the real estate of any intestate."

By chapter 24 of the Acts of 1789 it was enacted:

"Where real estate may be held by two or more persons as tenants in common, they shall and may have the same liberty and privilege of having their said estates divided as is provided by the act [Acts 1787, c. 17] for dividing the estates of intestates; and the division when made shall be good and effectual in law to bind the parties, their heirs and assigns."

Chapter 11 of the Acts of 1799 extends the right to any person or persons holding "any lands, tenements or hereditaments, in fee simple, or for less estate, as tenant or tenants in common, or as joint tenants, or in coparcenary, or other undivided estate."

Chapter 123 of the Acts of 1815 authorized the partition to be "in proportion of equal value, and not quantity as heretofore practiced."

Chapter 41 of the Acts of 1817 provided for the case of lands situated in more counties than one.

Chapter 37 of the Acts of 1823 provided: "Upon petition being filed by any heir or devisee of any deceased person, or by any one having an undivided interest in any real estate, for the partition of said real estate, and the widow of such deceased person shall not, previous

to the time of filing such petition, have had dower assigned according to the laws now in force and use, it shall be lawful for the court in which the petition is filed, to appoint five commissioners whose duty it shall be to make partition of the whole of the real estate liable to such division, or so much thereof as may be desired by the petitioner, in the same manner that partition has heretofore been made of estates, first assigning, however, to the widow her dower of one-third of the whole of said estate, which assignment of dower shall be binding."

The next act (chapter 54 of the Acts of 1827) provided for a sale in lieu of partition as follows:

"Section 1. Where the heirs or legal representatives of any deceased person shall inherit any real estate, and the same shall be so situated that partition thereof cannot be made, in the mode pointed out by law, or where such estate may be of a description that it would be manifestly for the advantage of the heirs or legal representatives of such deceased person, that the same be sold, it shall and may be lawful for any person or persons entitled to any part of such estate to file his bill in the circuit or chancery court of the county or district where such lands may be situated, and upon satisfactory proof that such real estate cannot be equally divided among those entitled thereto, or that it would be manifestly for the interest of such heirs or representatives that the same should be sold, said court may proceed to decree

that the same be sold upon such terms and conditions as may seem best for the benefit of the parties.

"Sec. 2. Where any sale may be made under the authority of this act, the proceeds thereof shall be divided among the parties entitled thereto, in the same proportions that they were entitled to of the real estate sold.

"Sec. 3. Where any of the persons whose land may be sold under the provisions of this act are minors under the age of twenty-one years, it shall be the duty of the court decreeing such sale, to direct the manner in which the funds arising therefrom, belonging to such minors, shall be appropriated: and if such court should deem it expedient, said court may direct that said moneys be laid out in the purchase of other lands for said minors."

"Sec. 5. Suits prosecuted under this act shall be conducted in the same way as other suits in equity, and sales made under this act shall vest in the purchaser, a good and sufficient title in fee simple."

Chapter 35 of the Acts of 1829 enacted:

"Where any real estate shall be held by two or more tenants in common, or as tenants in coparcenary and the same shall be so situated that partitions thereof cannot be made in the mode pointed out by law, or where such estate may be of a description that it would be manifestly for the advantage of said tenants in common that the same be sold, it shall and may be lawful for such tenant or tenants in common, to file his or their bill in the circuit or chancery court of the county or district where such estate may be situated, where the same pro-

ceedings may be had and decree made as said act [Acts 1827, c. 54] points out in cases of the heirs of persons dying intestate."

The last amendment of the partition laws prior to the Code of 1858 was chapter 48, p. 118, of the Acts of 1854. That act is as follows:

"Section 1. That the partition laws of this State be so amended that when several persons shall hold or be in the possession of any lands, tenements or hereditaments as joint tenants, or as tenants in common, in which one or more of them shall have estates of inheritance or for life or lives, or for years, any one or more of such persons, being of full age, may apply for a division or partition of such premises according to the respective rights of the parties interested therein, and for a sale of such premises, if it shall appear that a partition cannot be made without great prejudice to the owners.

"Sec. 2. That it shall be the duty of the court to make partition in such cases, by setting apart to such of the parties as desire it their shares in severalty, and leaving the shares of such other parties as desire it in common; and if there are minors, the court may, in its discretion, leave their shares in common or set their shares apart to them in severalty, as may appear to be just and right upon the proof introduced; but in no case shall the fact that there are minors interested in such premises, and that it is for their interest that their shares be kept together, deprive the other parties of the

right to have their shares set apart to them in severalty as aforesaid.

"Sec. 3. That when the premises so held in common are subject, in whole or in part, to the incumbrance of dower or of tenancy by curtesy any one or more of the joint owners, being of full age, may apply for partition of said premises, and it shall be the duty of the court to order partition accordingly, setting apart to such as desire it, their shares in severalty, and leaving others in common, as provided in the second section of this act.

"Sec. 4. That it shall be the duty of the court in all cases where the commissioners appointed to make partition, report that exact partition cannot be made without injury to the parties, and that they have made the partition as nearly equal as they can, and also report the value of each share, or the sum necessary to be paid by some of the shares to equalize the others, to confirm the partition, and give a decree in favor of the persons to whom the smaller shares have been allotted against those having the larger shares, which decree shall be a lien on the said larger shares: ` Provided, always, that where there are infants, the court shall direct the money charged on their shares to be first paid out of their personal estate (if any).

"Sec. 5. That the provisions of this act shall apply to all partition cases in any court now authorized to make partition."

The foregoing statutes furnish a basis of comparison

·which will enable us to ascertain the changes and additions made by the compilers of the Code of 1858. We shall note here, however, only such as immediately concern the case we have in hand. It is perceived· that section 3262, Code 1858 (Shannon's Code, section 5010), embraces among the persons who may have partition only the classes covered by the Act of 1854, but that section 3293 (Shannon's Code, section 5043) is broader than chapter 54, Acts 1827, and chapter 35, Acts 1829, as to the persons who may have sale for division of proceeds, and extends the privilege to all who have the right to partition, if they cause it to appear that the premises are so situated that partition thereof cannot be made, or that they are of such a description that it would be manifestly to the advantage of the parties that the land should be sold, instead of partitioned. It is observed that under section 3262 (Shannon's Code, section 5010) and section 3263 (Shannon's Code, section 5011) any person owning with others an estate in lands, whether of inheritance or for life, or for years, "as tenant in common or otherwise," is entitled to partition, whether the land be held with others, be wholly unincumbered, or be subject to a life estate by dower, or curtesy, or to an incumbrance by mortgage or otherwise. It is noted that under the next section (3264 [Shannon's Code, section 5012]) it is provided that the partition may be had, although some of the joint owners are infants and that it is to their interest that the property should not be partitioned. All of these provisions are embraced in

the preceding statutes, and clearly cover only the various forms of joint or concurrent ownership—using the term broadly—in some of its various forms. It is clear that under section 3262 (Shannon's Code, section 5010) the idea of a concurrent possession is also prominent—"any person having an estate . . . in lands and holding and being in possession thereof, as tenants in common or otherwise with others"—while the case provided for under the next section (3263 [Shannon's Code, section 5011]) is in part an exception to the rule of concurrent possession, and covers the case of persons who are out of possession because of the incumbrance of a preceding estate, the owner of which may be in possession, as the holder of an estate by dower or curtesy, as well as when the incumbrance is "by mortgage or otherwise." This idea of concurrent possession may be thus illustrated: Two or more persons holding in fee, which is the common case; two or more holding for life, and a third person holding a part of the same tract in fee (*Rutherford* v. *Rutherford,* 116 Tenn., 383-386, 92 S. W., 1112, 115 Am. St. Rep., 799) ; two or more holding for years; one holding an undivided interest in fee, and another an undivided interest for life, with remainder to a third person in fee (*Freeman* v. *Freeman,* 9 Heisk., 301). Either one of the persons so situated may have a partition when the land is susceptible of it, or a sale for division when the requisites therefor are made to appear, subject to the qualification that, where the purpose of the bill is to effect a division between persons whose

estates are less than a fee, a sale cannot be had of all the interests in the land unless it be made to appear that such sale would be beneficial to all. *Rutherford* v. *Rutherford,* supra.

So far the questions involved are mainly covered by authority and present no difficulty. But the following new feature is added in section 3264 (Shannon's Code, section 5012), viz.: "That the several estates and interests of the parties are altogether different and distinct" will not affect the right of partition, nor the right of sale for division. This language is very broad. What does it mean?

We shall not attempt an exegesis, further than to inquire whether it covers the case of an individual owner who holds a life estate in all of the lands sought to be partitioned or sold for division. Does the language quoted authorize such individual owner of a life estate to bring a bill against remaindermen for a partition of the estate or a sale for division? We have seen that such bill could not be maintained under section 3262 (Shannon's Code, section 5010), because there is no concurrent possession; nor under section 3263 (Shannon's Code, section 5011), because there is no ownership of an estate with others, subject to a preceding incumbering estate. The broad language quoted is to the effect that the relief sought shall not be denied on the ground "that the several estates are altogether different and distinct." Estates in fee are alike. So are estates

120 Tenn—33

for life and estates for years.  Estates in fee and for
life are different and distinct.  So are estates for life
and estates for years, and so are estates in fee and es-
tates for years.  But so are estates for life and estates
in remainder expectant upon the termination of the life
estate; and this is true, although it is likewise true that
all of the estates referred to may be carved out of the
fee, and taken together constitute it.  However, it is to
be observed that in partition cases the question is usu-
ally presented of different estates in undivided parts of
the whole, and not estates in succession, each in their
order, covering the whole.

But, if nothing more was intended than was already
covered by section 3262 (Shannon's Code, section 5010)
and section 3263 (Shannon's Code, section 5011), why
was the language referred to added in section 3264
(Shannon's Code, section 5012), which we have quoted?
But, as stated, we need not pursue the question further
than to inquire whether it covers the specific case we
have before us—that of an individual owner of a life
estate covering all of the land seeking a partition or sale
for division against the persons in remainder or rever-
sion.

We think it does not cover such a case, at least as to
the matter of partition in kind, because of the following
provisions, some of which are also new—that is, not ap-
pearing in previous statutes.  Whether it covers sales
for partition we shall consider later.  The sections re-
ferred to are as follows:

"Sec. 3291 (Shannon's Code, section 5040). The partition thus made is conclusive, (1) on all parties named in the proceedings who have at the time any interest in the premises divided, as owner in fee, or as tenants for years, or as entitled to the reversion, remainder or inheritance of such premises after the termination of any particular estate therein; or who, by any contingency in any will, conveyance or otherwise, may be or may become entitled to any beneficial interest in the premises; *or who shall have any interest in any individual share of the premises, as tenant for years, for life, or by the curtesy, or in dower;* (2) on all persons interested in the premises who are unknown, to whom notice has been given as hereinbefore directed; (3) on all persons claiming from such parties or persons or either of them.

"Sec. 3292 (Shannon's Code, section 5041). Such judgment and partition will not affect any tenants, or persons claiming as tenants in dower by the curtesy or for life, *to the whole of the premises,* nor preclude any person, except those specified in the last section from controverting the title or interest of the parties between whom the partition has been made."

It is perceived from the parts of the two sections which we have indicated by italics that a difference is made between the case of one who holds an estate for life "in any individual share of the premises" and one who owns such an estate "in the whole of the premises;" the former being bound, and the latter not bound. This

clearly indicates that one who owns a life estate in the whole of the premises does not enter into the scheme of partition at all; that such one is neither entitled to its benefits nor subject to its burdens. Is the same rule found operative, when we reach the sections which permit sales for division in lieu of partition in kind and regulate the practice?

Those sections are as follows:

"Sec. 3305 (Shannon's Code, section 5054). The court may, with the assent of the person entitled to an estate in dower, or by curtesy, or for life, to the whole or any part of the premises, who is a party to the proceedings, sell such estate with the rest.

"Sec. 3306 (Shannon's Code, section 5055). If such person is incapable of giving assent, the court may determine, under all the circumstances, and taking into view the interest of all the parties, whether such estates ought to be excepted from the sale, or sold.

"Sec. 3307 (Shannon's Code, section 5056). When such interest is sold, the value thereof may be ascertained and paid over in gross, or the proper proportion of the fund invested, and the income paid over to the party during the continuance of the estate.

"Sec. 3308 (Shannon's Code, section 5057). If the person entitled to any such estate in dower, by the curtesy, or for life, be unknown, the court may determine whether the estate shall be sold or not, as in the case of persons under disability, and, in the event of sale, make such order for the protection of the rights

of such person in the same manner, as far as may be, as if the person were known and had appeared."

When we compare these sections with the preceding ones which we have quoted, it is observed that, while an estate for life in the whole of the premises does not and cannot enter into the scheme of partition at all, yet it may enter into the scheme of a sale for division, but only in a qualified way. This can only be with consent of the life tenant, when that person is one *sui juris*. When the life tenant is a person under disability, the court will determine under all the circumstances, and, taking into view the interests of all the parties, whether such estate ought to be excepted from the sale or should be sold.

The same rule applies when the life tenant is unknown. This does not mean that a life tenant, by consenting to a sale of the property through a bill brought by him for that purpose, can force a sale. We do not doubt that any one of the owners in remainder or reversion could bring a bill for sale of property against his co-tenants in reversion or remainder, and the life tenant, and with the assent of the latter, if a person *sui juris*, have the land sold, if for the benefit of all; nor do we doubt that, where the life tenant is a person under disability, that person could be made a defendant in the supposed bill, and the court would order the land sold, if for the benefit of all, even though the life tenant should be incapable of giving assent, because of disability, or because not known.

But the statute does not contemplate a bill filed by

the life tenant of the whole premises against those in reversion or remainder for the purpose of effecting a sale, in order that he may have his life estate valued and paid to him in money.  The sale of a life estate covering the whole premises is a mere incident to the right of persons in remainder or reversion to have their interests sold for division, and will not be granted against the life tenant unless he consent, if capable of consenting, and if he is not capable of giving consent the court will not consent for him, unless it can see that such sale would be to his interest.  Any other rule would result in taking the property of one private person and subjecting it to the use of another, and be a violation of the constitution.

It is thus perceived that the right of sale for division of a limited character is somewhat broader than the right of partition, because, in the nature of things, there may be a division after sale, while it would not be possible to effect the division in kind with the property unsold.  For example, it would be impossible to effect a partition in kind between a life tenant of the whole premises and those in remainder.  In such case there would be no possible basis of partition; but, when the thing to be divided is sold, the partition is easily effected by the valuation of the life estate.

It is suggested in the brief of the guardian *ad litem* that such sale might be very damaging to the persons in remainder, because, where the life tenant is young, if the life estate be valued according to annuity tables,

the greater part of the fund would be appropriated by the life tenant. But in this State we have not adopted the annuity tables, or life tables, for the absolute purpose suggested. They may be referred to as evidence; but it is held in our authorities (*Carnes & Perry* v. *Polk*, 5 Heisk., 244), that the estate is to be estimated according to its market value. The nature of the property is to be considered, the age of the person, the habits, constitution, etc. The court must take into consideration, also, the fact that the party whose life is being estimated may not live out the expectancy, and that one buying the life estate would, as a practical person, take into consideration this fact. It is also to be taken into consideration that while, in using the annuity tables, we reach the result by calculating the interest on the sum to be divided for one year at six per cent. and multiplying the amount thus ascertained by the sum which the tables show one dollar would earn during the life expectancy of the person whose life is under consideration, no such absolute value is contemplated by the rule in this State. Under our rule we must take into consideration, in addition to the contingencies already mentioned, also the fact that taxes are to be paid from year to year, also that the lending of money, or its management in any form, or the conduct of any business, is not wholly a certain matter, but depends upon many contingencies and chances which the best judgment is unable at times

to surmount or to avoid, that profit is not inevitable, and that loss, to some extent, is unescapable.

Our rule contemplates that all these matters should be weighed in determining what would be a fair proportion of the fund for the life tenant. It contemplates, also, that some concession should be made by the life tenant by reason of being relieved of any duty to the remaindermen in the care and preservation of the property. But it is unnecessary to dwell upon these considerations in the present *status* of the case, since we have held that the life tenant is not entitled to maintain the bill as one to effect a sale for division, for the purpose of having her life estate valued and paid to her in money. Whether such valuation could be had on a sale made under the other aspect of the bill would depend upon other considerations not presented in the bill, and resting within the general equity powers of the court, and need not be examined here. Circumstances might be conceived which would justify such a course, but we do not find them stated in the bill.

But it is insisted for the complainant that this contention is sustained by the case of *Rutherford* v. *Rutherford,* supra. This is a mistaken view. In that case there were two life tenants, to each of whom had been devised an undivided one-half interest in the sixty-three acres there involved, and after the will went into effect there had been a court proceeding whereby the children of Mrs. Rutherford (one of the life tenants), in their representative capacity as standing for the ultimate re-

maindermen, had been decreed an estate in fee in five acres undivided in the tract, free from the two life estates. This presented a clear case under the partition statutes. Both of the life tenants were entitled to possession, and the children of Mrs. Rutherford were entitled to possession in respect of the undivided five acres. No other conclusion could have been reached in that case than was reached. Here we have a very different case—that of a life tenant of the whole premises seeking a sale in lieu of partition against the owners of the reversion.

We are also referred to *Bierce* v. *James,* 87 Tenn., 538, 11 S. W., 788, as supporting complainant's contention; but in that case we find only the case of a sale for division between remaindermen, subject to an estate by the curtesy in one tract and an estate of dower in the other, falling clearly within section 3263 of the Code (Shannon's Code, sec. 5011).

Our attention has been called to chapter 403, p. 1371, Acts 1907, which provides for a sale of land covered by estates in dower, in curtesy, or by way of homestead, and a division of the proceeds among the parties in interest. It is proper to say that the complainant does not rely upon this statute, since it has no bearing upon the form of life estate owned by her. It was referred to merely by the able guardian *ad litem* for the purpose of distinguishing. We express no opinion in respect of this statute, further than to say that it does not control the present controversy.

From what has been said it is apparent that the decree of the chancellor must be affirmed in so far as the bill can be treated as a bill under the partition statutes. However, the chancellor was in error in dismissing the bill outright. It was good under the inherent powers of the chancery court to convert the estates of persons under disability because to their manifest interest. Under the facts stated, if they should be fully and clearly made out in the evidence, it would be the duty of the chancellor to direct a sale of the farm in question for a reinvestment of the proceeds; the new title to be taken in substance as the present one stands. This means, of course, that we think the point stated in the fifth ground of demurrer filed by the guardian *ad litem* is sound in the abstract; that is, that under the present bill, treated as a bill for reinvestment, the life tenant could not have her estate valued and paid out to her in money. But the demurrer is not good as a demurrer, because it does not go to the whole bill, or to any specific severable part thereof, but only to a part of the relief asked. The only other ground of demurrer which attacks the bill as one for sale and reinvestment is the third ground, which makes the point that the life tenant is complainant, whereas, being a married woman, she should be made defendant. This practice is indicated in Code, sec. 3324 (Shannon's Code, sec. 5073), found under the chapter entitled "Of the Sale of Property of Persons under Disability." We do not think this provision is mandatory, but that it is only directory. The practice

referred to is generally the best; but in a case like the present, where the life tenant, the married woman, is guardian for the minors, and there is no antagonism between her interests and those of her husband in respect of the propriety of a sale of her interest, it is better that she should appear as complainant, joined by her husband.

Moreover, if she were made defendant, it would be impossible to comply with another provision of the same section, which directs that the guardian shall be made complainant and the minors be made defendants. In addition to this, it is to be noted that the chancery court has inherent power to convert the estates of persons under disability, and in the exercise of that power it would, of course, not be bound by the directory provision of the chapter referred to. We do not say that none of the provisions of the chapter referred to are mandatory. We have not that question before us. As to the inherent powers of the chancery court in cases of this kind, see *Lenow* v. *Arrington*, 111 Tenn., 720, 69 S. W., 314; *Hurt* v. *Long*, 90 Tenn., 445, 16 S. W., 968; *Gray* v. *Barnard*, 1 Tenn. Ch., 298, 301; *Case of G. C. Brown*, 8 Humph., 200; *Martin* v. *Keeton*, 10 Humph., 539; *Thompson* v. *Mebane*, 4 Heisk., 373, 377; *Talbot* v. *Provine*, 7 Baxt., 509; *Winchester* v. *Winchester*, 1 Head, 460, 491, 492.

On the latter page of the case last cited, speaking concerning the practice under the inherent power of the

court in respect of the particular matter we now have under examination, the court said:

"The second matter assigned as error is that the married women were joined with their husbands in the petition. We deem this not only no error, but there is some doubt whether it would not have been error if they had not been so joined. The subject-matter was not the separate estate of the wife, and she had no interest antagonistic to that of her husband. Story's Equity Pleading, sec. 61. Such joinder was in accordance with the general practice in this State."

It results that the decree of the chancellor will be modified in the manner above indicated, and that the cause will be remanded for answer and further proceedings pursuant to the directions contained in this opinion.

The costs of the appeal will be equally divided between the complainant, Mrs. Holt, and the defendants; that is, one-half to be paid by Mrs. Holt, and the other half by the defendants.