JOHN W. JOHNSON *v.* J. L. COVINGTON *et al.*\*
PAGE *et al. v.* JOHNSON *et al.*

(*Nashville.* December Term, 1922.)

1. **LIFE ESTATES.** Decree authorizing sale for reinvestment held to sufficiently describe land to be purchased.

A decree of the chancery court authorizing sale of land by the life tenant for reinvestment and the investment of the proceeds in another tract of land, which described the tract of land to be purchased by reference to a larger tract, in which it was included in such manner that by reference to the description of the larger tract three boundary lines of the tract to be purchased were definitely located, *held* to embrace a sufficiently definite description of the tract to be purchased under the maxim, "*Id certum est, quod certum reddi potest.*" (*Post, pp.* 60, 61.)

Cases cited and approved: Holt v. Hamlin, 120 Tenn., 496; Ricardi v. Gaboury, 115 Tenn., 484; Lenow v. Arrington, 111 Tenn., 720; Wilson v. Schaefer, 107 Tenn., 300; Ridley v. Holliday, 106 Tenn., 607; Hurt v. Long, 90 Tenn., 445; Stephens v. Taylor, 74 Tenn.. 307.

Case cited and distinguished: Wilkins v. McCorkle, 112 Tenn., 710.

Code cited and construed: Secs. 5072 to 5089 (S.).

2. **INFANTS.** Failure of minor remaindermen over fourteen years of age to file answers held not to invalidate proceedings for sale of land by life tenant for reinvestment.

In proceedings in chancery court by a life tenant to sell land for reinvestment, and to invest the proceeds in other lands, the failure of minor remaindermen, defendants over fourteen years of age, to file personal answers as required by Shannon's Code, section 5074, *held* not sufficient to render the proceeding and decree void after the lapse of a period of thirty years, especially where the facts in the entire case showed the decree to have been beneficial to the

---

\*For discussion on question of whether gift to one spouse by parent of the other is an advancement see note in 26 L. R. A. (N. S.), 1050.

..minors, and that a guardian *ad litem* represented them throughout the litigation, and the only effect of filing personal answers would have been to acquaint the chancellor with their personal views relative to·the sale, and they have never since complained or questioned the proceeding. (*Post, pp.* 61, 62.)

Case cited and distinguished: Lancaster v. Lancaster, 81 Tenn., 130.

Code cited and construed: Sec. 5074 (S.).

3. **INFANTS.** Chancery court has inherent jurisdiction to authorize sale of lands.

The chancery court has, independent of statute, inherent jurisdiction to make, ratify, or consent to the sale of lands of infants for their benefit, and sales so made are not necessarily invalid for failure to comply with statutory provisions. (*Post, pp.* 62, 63.)

4. **EQUITY.** Record of decree divesting title and vesting it in others equivalent to registration of conveyance.

A decree divesting title to property out of any of the parties and vesting it in others has, under Shannon's Code, section 6301, all the force and effect of a conveyance executed in due form of law, and the fact that such decree is not registered in the office of the county register does not affect its validity; its entry upon the record books of the court in which it was rendered answering all the purposes of registration. (*Post, pp.* 63, 64.)

5. **INFANTS.** Infant party to chancery decree bound thereby.

Minors are concluded to the same extent as adult parties by the decrees of a chancery court, and one who was a party to proceedings in which the life tenant obtained a decree authorizing the sale of land and its reinvestment is charged with notice of such decree, and bound by it, though he was a minor when the decree was rendered. (*Post, pp.* 63, 64.)

6. **LIFE ESTATES.** Adverse possession cannot be predicated against remaindermen on possession prior to termination of life estate.

The statute of limitations does not run against a remainderman until the falling in of the life estate, because until that time the life tenant is entitled to the possession to the exclusion of the re-

Johnson v. Covington.

mainderman, so one remainderman cannot predicate adverse possession upon his possession of the estate before the death of the life tenant.  (*Post, pp.* 63, 64.)

Cases cited and approved:   Wilkins v. McCorkle, 112 Tenn., 688; Hurt v. Long, 90 Tenn., 445; Templeton v. Twitty, 88 Tenn., 595.

Code cited and construed:   Sec. 6301 (S.).

7. **TENANCY IN COMMON.**  Cotenant excluding other cotenants from property liable to account for rent regardless of profits.

A tenant in common who is in the sole possession of the common property is liable to account to his cotenants for the rents and profits thereof, where his possession is of such a nature as to be equivalent to an ouster of his cotenants, one cotenant having no right to the exclusive possession of any particular portion of the property, and his liability not being dependent on the receipt of profits by him out of the common property.  (*Post, pp.* 64-76.)

Cases cited and approved:   O'Bryan Bros. v. Glenn Bros., 91 Tenn., 106; Utermehle v. Norment, 197 U. S., 40.

Case cited and distinguished : Railroad v. Iron Co., 118 Tenn., 194.

8. **WILLS.**  Devisee claiming his own property which testator disposed of must compensate disappointed devisee to extent of property devised to claimant.

Where a devise of real property failed by reason of the testator's title having been adjudicated a life tenancy only, and his heirs entitled to share therein as remaindermen, such remaindermen, by claiming their title in such land, did not forfeit all benefits under the will, but are required to compensate the disappointed beneficiary for the loss resulting from such election out of the property of the testator which they take under the will, so far as it is sufficient for the purpose, but their obligator extends no further, and, where the devise or bequest intended by the will for any of such remaindermen is insufficient to compensate the disappointed devisee for the loss resulting from such election, the electing beneficiary will take nothing under the will.  (*Post, pp.* 76-82.)

Case cited and distinguished: Colvert v. Wood, 93 Tenn., 454.

148 Tenn.—4

Johnson v. Covington.

9. **WILLS.** Bequest in terms to son-in-law construed as gift to daughter, and daughter required to contribute where claiming as her own land devised to others.

Where a testator by the language of the several bequests and by a contemporaneous written declaration evidenced an intent to give equal shares of his estate to each of his children, though in the will he mentioned previous gifts to his sons-in-law, testator's evident intention was that the bequest to each son-in-law was intended as a gift to the daughter; and, where the testator's heirs elected to claim real estate to which they were entitled as remaindermen under their grandfather's will, devising to their father only a life estate, each of the heirs, including the married daughters, were required to contribute to the loss of the disappointed devisee to whom testator had undertaken to give the land in question. (*Post, pp.* 82-84.)

10. **WILLS.** Rule as to bequests to son-in-law construed as gift to daughter stated.

Where testator's will manifested an intent to give each of his heirs an equal share, a bequest to a son-in-law, whose wife was living at the time of the bequest, will be construed and held a gift to the daughter; but, where one of testator's daughters had died before the bequest was made, a bequest to her surviving husband will not be construed as a gift to her. (*Post, pp.* 84, 85.)

Case cited and approved: Ireland v. Dyer, 133 Ga., 851.

11. **WILLS.** In determining contribution of heirs to disappointed devisee, gifts made prior to execution of will cannot be treated as bequests.

Where heirs elected to claim as remaindermen land which the testator, holding only a life estate, undertook to dispose of by a devise in fee, and where therefore required to contribute to the disappointed devisee from the property received by them under the will, in determining the amount of their contribution and the basis on which they should contribute gifts made to them prior to the execution of the will cannot be treated as bequests because not received by virtue of the will, where they were referred to in

the will only in explanation of testator's intention to make an equal distribution of his estate, and as showing that he intended them as advancements.   (*Post, p.* 85.)

12. **WILLS.** Devisee disappointed by failure of devise of land can have amount which other devisees must pay in contribution determined by value at testator's death.

Where a devise of real estate failed because the testator owned only a life estate therein, the other heirs and devisees being the remaindermen, the amount which the disappointed devisee is entitled to receive from the other devisees is to be determined by ascertaining the actual or market value of the land as of the date of testator's death.   (*Post, pp.* 85, 86.)

FROM WILLIAMSON.

Appeal from the Chancery Court of Williamson County. —HON. J. C. HOBBS, Chancellor.

J. C. EGGLESTON and SAM HOLDING, for appellants.

R. H. CROCKETT and T. P. HENDERSON, for appellees.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

These causes were consolidated for hearing, but separate decrees were entered.

The Page bill was filed first, and sought to partition a sixty-acre tract of land among the children and grandchildren of W. W. Johnson, Jr., who died testate in Williamson county on December 11, 1917.

His surviving children were complainants Mrs. Nancy J. Page, age fifty-one years, Mrs. Willie D. Covington,

age forty-four years, Mrs. Alice Maxey Thomas, age thirty-six years, Mrs. Mary D. Atkinson, age forty-eight years, and the defendants, John W. Johnson, age forty-one years, and James K. Johnson, age fifty-three years. A daughter, Fannie Lou Jordan, died in 1911, leaving four children surviving her, to-wit, complainants James W. Jordan, Mrs. Fannie Lou McMurrey, and the defendants William T. Jordan, Jr., and Willie Jordan, the last two named being minors without regular guardian.

W. W. Johnson, Sr., died testate, in 1874, the fifth item of his will being as follows:

"I give and bequeath to my son, William W., a tract of land on the south corner of original homestead, containing about one hundred twenty acres, which, together with a note which I gave to him bearing date October 4, 1860 without interest, signed by him for $1,000, I value at $4,-000. To have and to hold the use and benefit of said land (said land not being subject to any debts or contracts which have been or may be made) during his natural life and at his death to his wife and children, and at the death or marriage of his wife, then said land shall revert to his children."

The bill alleged that in 1887, by a valid decree entered in the chancery court of Williamson county, said one hundred twenty-acre tract of land was sold for reinvestment, and the proceeds were invested in the sixty-acre tract of land involved, the title being vested under the same terms and conditions as those set out in the devise of the one hundred twenty-acre tract of land.

Mrs. Fannie Johnson, wife of W. W. Johnson, Jr., died in 1899, and it is contended that upon the death of W. W. Johnson, Jr., in 1917, the complainants and defend-

ants became absolute owners, and were entitled to the possession of said sixty-acre tract of land as tenants in common.

In the chancery court the question of the application of the class doctrine, as to the interest which Mrs. Jordan would have taken had she outlived her father, was raised, but the chancellor held that the class doctrine did not apply under said provision of the will, and that her children took a one-seventh interest in the sixty-acre tract of land. It does not appear that this feature of the decree was made the basis of an assignment of error either in the court of civil appeals or in this court.

Various errors are assigned by the appellant John W. Johnson which question the correctness of the decree in the reinvestment suit of 1887.

Upon this question the court of civil appeals said: "Through his pleadings below, and through his assignments of error in this court, appellant insists that the 'reinvestment proceedings' (in the aforesaid case of W. W. Johnson et al. v. Fred J. Page et al.) did not comply with the statutes governing 'the sale of property of persons under disability,' as found in Shannon's Code, sections 5072 to 5089, both inclusive, and were therefore invalid. The particulars wherein appellant claims that said proceedings were not in compliance with the statutes mentioned are as follows:

"(a) That the pleadings were not in conformity to section 5078, which provides that, 'in all such cases, the pleadings shall set forth fully and particularly the age, circumstances, and conditions of the party under disability; what other property, if any, such person owns, or is in any way entitled to, and the cause or reason why a sale of the

particular property is sought; and such pleadings shall be sworn to.'

"(b) Three of the remaindermen made defendants to the bill in said case were minors over fourteen years of age, and one of whom was a married woman, viz. Mrs. Page, Miss Mary D. Johnson and Miss Fannie Lou Johnson, and neither of them answered the bill in person, as required by section 5074, which provides that 'the infant, if over fourteen years of age, and the married woman shall answer the bill in person.'

"(c) That 'while the proof shows, and the facts are, that the $3,000, the proceeds of the one hundred twenty acres, was properly used by W. W. Johnson in good faith in paying for the Crouch place in part, there was no investment of said $3,000 in any particular portion of said Crouch place.'

"We find by reference to the bill in the 're-investment proceedings,' which is in the record now before us, that it was not verified by the affidavit of either of the complainants, or any one else; that is, it was not 'sworn to.' The remaindermen under disability were made defendants to said bill, and it was stated that they were minors without regular guardians, and it also appeared that one of them was a married woman, but otherwise their respective ages were not stated. So far as appears, the minor defendants over fourteen years of age (one of whom was a married woman) did not answer the bill in person, but all of them answered by a guardian *ad litem* appointed by the court.

"The bill did not 'set forth fully and particularly' the circumstances and condition of the parties under disability, what other property, if any, they owned, or were in

any way entitled to. As tending to show why the sale of the particular property (the one hundred twenty-acre tract) was sought, the bill contained averments as follows, viz.:

" 'That it is to the interest of all the owners of said land to make the sale proposed and especially the remaindermen, the minors mentioned above, at the price and on the terms as made and to reinvest the proceeds of such sale, to wit, the sum of $3,000 representing the one hundred twenty acres of land, in other lands in a more suitable locality. These lands are off the pike, and not very convenient to schools. And complainant has purchased from John H. Crouch and wife a tract of land of two hundred twenty-four acres lying in the Eighteenth district of said county in a better locality and more convenient to schools, and he desires to reinvest of the proceeds of said sale the sum of $3,000, representing the purchase price of the aforesaid price of one hundred twenty acres in the Crouch tract of land or in such a number of acres thereof to be laid off and designated, as will be reasonably worth the $3,000.'

"It is thus seen that the pleadings in said case did not conform in certain respects to the requirements of the statutes above mentioned.

"But it is clear, that under the general rules of chancery pleading and practice, independent of the aforesaid Code sections, the court had jurisdiction of the parties and the subject-matter.

"The chancery court has, independent of statute, inherent jurisdiction, inclusive of and more comprehensive than that provided and regulated by the aforementioned sections of the Code, to make or ratify a sale of the lands

of persons under disability for purpose of reinvestment, or for the manifest interest of such persons. *Holt* v. *Hamlin,* 120 Tenn., 496, 522, 111 S. W., 241; *Ricardi* v. *Gaboury,* 115 Tenn., 484, 489, 89 S. W., 98; *Lenow* v. *Arrington,* 111 Tenn., 720, 729, 69 S. W., 314; *Wilson* v. *Schaefer,* 107 Tenn., 300, 331, 336, 64 S. W., 208; *Ridley* v. *Holliday,* 106 Tenn., 607, 619, 61 S. W., 1025, 53 L. R. A., 477, 82 Am. St. Rep., 902; *Hurt* v. *Long,* 90 Tenn., 445, 459, 16 S. W., 968.

"It is worthy of remark that appellant does not question the validity of the sale of the one hundred twenty acres owned (in remainder) by the persons under disability, but attacks only the reinvestment of the proceeds of such sale.

"We are of the opinion that there was a valid reinvestment of $3,000, as the proceeds of the sale of the one hundred twenty acres, in a specific and sufficiently ascertained and described sixty-acre parcel of the Crouch land. It was averred in the bill in the 'reinvestment proceedings' that 'he (W. W. Johnson) desires to reinvest of the proceeds of said sale the sum of $3,000, representing the aforesaid price of (the) one hundred twenty acres, in the Crouch tract of land, or in such a number of acres thereof, to be laid off and designated, as will be reasonably worth the $3,000'; and the prayer of said bill was to the same effect, and, in addition, complainants prayed that 'a decree be rendered divesting and vesting title therein accordingly to the end that said fund or so much of the land shall be held upon the same condition and in the same way as provided in and by the will of W. W. Johnson, Sr.'

"The desire and purpose of W. W. Johnson in instituting the reinvestment proceedings is further disclosed by his testimony in that case, wherein he was asked and answered as follows:

" 'While on this subject state what number of acres and what part of the Crouch tract you desire to make the investment in and give description of same? A. I would put it in sixty acres of the Crouch tract on the northern end fronting on the pike with a line running east and west so as to include the improvements, dwelling, etc.'

"The witness W. D. Shelton testified in the reinvestment case as follows:

" 'I know the Crouch land well and consider Mr. Johnson's investment there a good one, and if as he says to me he desires to set apart a portion of that tract so as to front on the pike and on the northern part of said tract, running a line east and west so as to make sixty acres including the house and improvements. This land is well worth $50 per acre and the sixty acres is worth the $3,000 and if this sixty acres of land is taken in exchange I would say that it would be greatly to the advantage of all the parties concerned. My reasons, among others not already stated, are that the school privileges and the chances to get about are much better, the land much better, and on a good pike, while the other land is off the pike, etc. Taking everything into view, I should say most emphatically that this exchange should be made.'

"The testimony of the witness S. E. Shannon in the reinvestment case was to the same effect as that of W. D. Shelton.

"Our references to the proof in the former case are not to be understood as an intimation that the evidence is or-

dinarily a matter to be considered in determining the validity of a decree when collaterally involved; but as appellant, in his attack on the decree in said former case, is claiming in privity with W. W. Johnson, he is, under elementary rules, estopped by any matter of record which would have estopped W. W. Johnson. If W. W. Johnson would have been estopped by the record in the reinvestment proceedings to question the title to the remaindermen to the particular sixty acres of the Crouch tract now claimed by them, appellant, claiming under the deed and will of W. W. Johnson, is likewise estopped.

"Recurring to the record in the case of *W. W. Johnson et al.* v. *Fred J. Page et al.*: One of the matters referred to the master was, 'What number of acres should be set apart, and in what portion of the tract?' (referring to the Crouch tract). In his report pursuant to the order of reference, the master said (among other things) the following, viz.:

" 'Valuing the one hundred twenty acres (for the purposes of the reinvestment) at $3,000, which, according to the proof, is some $1,000 more than its actual value, and setting apart sixty acres of the John H. Crouch place, including the house and improvements thereon, which Crouch place of two hundred twenty-four acres have been purchased by complainant as stated in the bill, the proposed change of investment of $3,000 from the one hundred twenty acres to the sixty acres, as shown by the proof, would be greatly to the interest and advantage of the minors and all concerned, and should certainly be sanctioned and confirmed by the court. The sixty acres in which the $3,000 should be reinvested lie in the Eighteenth district of Williamson county, and are a portion of

the northern end of the Crouch place, fronting on the turnpike, with a line running east and west so as to include the dwelling and other improvements.'

"The report of the master was confirmed, and the decree of the court ratified and confirmed the investment of the $3,000 in 'sixty acres of land purchased by W. W. Johnson from John H. Crouch and described as follows, viz.: Being a part of the Crouch tract, lying in the Eighteenth district of Williamson county, Tenn., and being that portion of said Crouch tract on the northern end thereof fronting on the pike with a line running' east and west so as to include the dwelling and other improvements;' and it was ordered and decreed by the court 'that all the right, title, claim, and interest of W. W. Johnson in and unto said sixty acres of land, the title thereof being now in him under the deed from John H. Crouch, be divested out of him and be vested in W. W. Johnson and wife, Fanny A. Johnson, for life, with remainder in fee to the children of said W. W. and Fanny A. Johnson as provided in and by the will of W. W. Johnson, Sr., deceased, and the same to be so held and owned.'

"The bill in said former case contained a full description of the entire 'Crouch tract,' giving the courses and distances of the several boundary lines thereof, and stated that the deed from Crouch and wife to W. W. Johnson for said land would be filed before final hearing, and said deed was thereafter filed in the cause. The description of the sixty acres in said decree, when taken in connection with the description of the 'Crouch tract,' definitely located and established the eastern, northern, and western boundary lines of the sixty-acre tract, and determined that the sixty-acre tract was quadrilateral in form so

that the location of the southern boundary line was a mere matter of calculation and measurement. 'It is impossible to conceive how, three sides of a tract of land being given, the other could be incapable of being determined.' 'If nobody owned on the fourth side, a straight line would close the *hiatus;* if any one did own on that side, the boundary would be controlled by that ownership.' *Stephens* v. *Taylor,* 6 Lea, 307, 310-311. In the instant case W. W. Johnson owned on the south side, and, as he was proposing to relinquish sixty acres for the purposes of the reinvestment, 'a straight line would close the *hiatus.'* The maxim, *'Id certum est, quod certum reddi potest,'* applies in such case. The facts just stated with reference to the description and location of the sixty-acre tract may be better visualized by an inspection of the plat which accompanies the 'Jefferson survey' filed as an exhibit in the present case.

"It results from what we have said that W. W. Johnson had only a life estate in the sixty-acre tract, and upon his death the right to possession of same vested in the remaindermen as tenants in common."

On the question of failure to verify the bill in such case this court, in *Wilkins* v. *McCorkle,* 112 Tenn., 710, 80 S. W., 839, said:

"Another point made against the proceedings is that there was no oath to the bill. It is not necessary that the oath should be attached to the bill. It may be on a separate piece of paper. We must presume, on collateral attack, that the proper oath was filed."

Upon the principle that what can be made certain is certain, we are of the opinion, as set forth by the court of

civil appeals, that the description of the sixty-acre tract of land was sufficient.

As to the failure of the minor defendants over fourteen years of age to file personal answers, in our opinion, under the facts of this cause, and after such a long period of time, this failure was not sufficient to render the proceeding void, especially at the instance of the appellant John W. Johnson.

The court had jurisdiction of all the parties and of the subject-matter. The court himself appointed a guardian *ad litem,* who not only filed an answer for said minor defendants, but who represented them throughout the litigation. The record in that cause shows that the decree entered by the chancellor was a beneficial one for said minor defendants. The only effect of filing personal answers would have been to acquaint the chancellor with their personal views relative to the sale of the one hundred twenty-acre tract and the reinvestment of the funds in the sixty-acre tract. After all, it was a question finally for the court, acting for them, to say what was for their best interest, and this he did. Said minor defendants, over fourteen years of age, have never complained about the matter, and are not now complaining; and, in our opinion, as previously stated, the appellant is not in a position to question that proceeding.

In *Lancaster* v. *Lancaster,* 13 Lea, 130, Mrs. Lancaster, by her bill, sought to set aside a deed which she had executed many years before. It was contended that she was estopped by a previous suit, filed by her husband, to which she was a defendant, and in which he asked that said tract of land be sold. The court, with reference to that contention, said:

"The record of that case, so far as it has been copied into this transcript, does not show whether the wife made herself an assenting party, . . . as required by the statute: Code, section 3325. [Shannon, section 5074]. A decree without such an answer was a nullity."

What the court decreed in that case was that, by her conduct, independently of the suit referred to above, she had estopped herself from questioning the validity of the deed, and the statement as to a decree being a nullity where such answer was not filed was *dictum,* and is not supported by our more recent decisions.

In note 1 to section 5072 of Shannon's Code, the author says:

"The chancery court has, independent of statute, inherent jurisdiction, inclusive of and more comprehensive than that provided and regulated by statute, to make, ratify, or consent to the sale of the lands of infants, for their benefit. Such sales are not necessarily invalid by reason of failure to comply with the statutory requirements on that subject."

Many of our decisions are cited, which sustain the statement.

There is nothing in the record in that case to indicate that the bill was filed under the statute, and it could have been filed independently of the statute under the inherent jurisdiction of the chancery court. This is a complete answer as to the contention of the appellant as to the irregularity of said proceedings. While there were undoubtedly some irregularities in the proceedings of said cause, we are clearly of the opinion that the decree entered therein was not void, and is not subject to attack by the appellant under the facts appearing.

It also appears that in January, 1902, W. W. Johnson, Jr., by warranty deed, conveyed fifteen acres off of the northern end of said sixty-acre tract of land to his son, John W. Johnson, in fee for a consideration of $750.

The appellant assigns error as to the action of the lower courts in holding that he only acquired an estate in said tract of land during the lifetime of his father.

The court of civil appeals, speaking through Mr. Justice FAW, answered this contention in a very satisfactory manner as follows:

"Appellant, John W. Johnson, took only an estate for the life of W. W. Johnson in the fifteen acres which W. W. Johnson undertook to convey to him by deed of 1902. It is true that the decree in the case of *W. W. Johnson et al. v. Fred J. Page et al.*, was not, so far as appears, registered in the register's office of Williamson county, but such registration was not necessary. A decree divesting title to property out of any of the parties and vesting it in others has all the force and effect of a conveyance by such parties, executed in due form of law. Shannon's Code, section 6301. 'Such conveyances need not be recorded in the register's office, in order to be effective, their entry upon the record books of the court in which they are rendered is sufficient, answering all the purposes of registration.' *Wilkins v. McCorkle*, 112 Tenn., 688, 706, 80 S. W., 834, 837.

"Moreover, John W. Johnson was a party to said former case in which the reinvestment was decreed, and he was charged with notice of and bound by the decree in that case. He was a minor when that decree was rendered, but minors are concluded to the same extent as

adult parties by the decrees of a chancery court. *Hurt* v. *Long,* 90 Tenn., 445, 449, 16 S. W., 968.

"The adverse possession of the fifteen-acre tract by appellant John W. Johnson since 1902 will not avail him as a defense against the remaindermen, for the reason that 'the Statute of Limitations does not run against a remainderman until the falling in of the life estate; because until that time the life tenant and not the remainderman is entitled to the possession.' *Templeton* v. *Twitty,* 88 Tenn., 595, 605, 14 S. W., 435, 437."

Error is also assigned as to the decrees of the other courts in charging appellant with rent on said sixty-acre tract of land since the death of W. W. Johnson, Jr.

The court of civil appeals, in its opinion, in response to this contention, said:

"It results from our rulings made above in disposing of the first six assignments of error that John W. Johnson is the owner of an undivided one-seventh interest in the sixty-acre tract, as a tenant in common with his brother and sisters and the children of his deceased sister, Mrs. Jordan, and appellant invokes the general rule that one tenant in common is not liable to his cotenants for rents. This rule does not apply here, for the reason that appellant has been in the exclusive possession of the sixty-acre tract since the death of W. W. Johnson, claiming the same adversely to his cotenants. 'While there is lack of uniformity in the decisions as to the liability of a cotenant to account for the value of the use and occupation of the common property where he is in sole occupation, but not to the exclusion of others who may desire to come in, the courts are agreed that a tenant in common who is in sole possession of the common property will be liable to

Johnson v. Covington.

account to his cotenant for the rents and profits thereof, where the possession of the occupying tenant is of such a nature as to amount to an ouster of his cotenant, or the equivalent of an ouster. The rule has been laid down that, while one cotenant is entitled to possession in common of the whole with his cotenant, he has no right to the exclusive possession of any particular portion; and if he exercises such right and excludes his cotenant from participation in the possession, he must account to his cotenant for his interest in the part from which he was ousted, even though he takes no more than his just share. And where one has thus ousted his cotenants his liability is not dependent on the receipt of profits by him out of the common property, for, in such a case, he must answer for the value of the use and occupation regardless of his actual income, and regardless, further, of whether his wrong has been profitable to himself or not. In this connection it is not necessary to prove a violent ejection, for an ouster sufficient to warrant a recovery may be inferred from circumstances.' 7 Ruling Case Law, pp. 828, 829."

We are of the opinion that no error appears in the decree in the Page cause, and same will be affirmed.

In the Johnson cause, or the second suit, the bill was filed for the purpose of construing the will of W. W. Johnson, Jr., and for the further purpose of administering his estate and adjusting the equities between the parties growing out of the matters to be hereinafter stated. All proper persons are parties to that suit.

The contest is between John W. Johnson, on the one hand, and the other devisees and legatees named in said will.

148 Tenn.—5

In 1901 the testator had the Crouch two hundred five-acre tract of land surveyed and platted, and this appears to be the only land in which he had any interest at the time of his death. Said plat was attached to his will and made a part thereof.

A rough sketch of same appears below:

Said will was duly probated, and is as follows:

Johnson v. Covington.

"I, W. W. Johnson, of the village of Triune, county of Williamson, State of Tennessee, of the age of eighty-one years past, and being of sound mind and disposing memory, do make, publish and declare this my last will and testament in manner following, revoking all other wills by me made at any time previous to this.

"Item 1. I direct my executor hereinafter named to pay out of my estate, as soon as possible after my demise, all of my just debts, together with the expense of my last sickness and my funeral and testamentary expenses.

"Item 2. I will that my son James K. Johnson have three thousand ($3,000) dollars out of my estate. Said James K. Johnson owes John W. Johnson two one thousand ($1,000) notes, borrowed money, which must be paid, with interest, out of this three thousand ($3,000) dollars.

"Item 3. I will that my son John W. Johnson have the home place I now live on, with the improvements thereon, it being lot number 2 and containing sixty (60) acres, Jefferson's survey which plat accompanies this will; and also lot No. 3 south of, and adjoining lot No. 2, and containing sixty-one and one-fifth (61 1-5) acres, Jefferson's survey. I value this one hundred and twenty-one and one fifth (121 1-5) acres to John W. Johnson at twelve thousand ($12,000) dollars, and after allowing him and his wife two thousand ($2,000) dollars for services and kindness rendered to me in my old age; I also give John W. Johnson the sum of three thousand ($3,000) dollars, this three thousand ($3,000) dollars and two thousand ($2,000) dollars to come out of the twelve thousand ($12,000) dollars leaving him owing my estate at my death seven thousand ($7,000) dollars and he to have and to hold the one hundred and twenty-one and one-fifth (121 1-5) acres to do

with as he pleases. My son John W. Johnson has never received any money from me.

"Item 4. I will that my daughter Alice Maxey Thomas and husband H. E. Thomas have lot No. 4, Jefferson survey, containing sixty-nine and one-twentieth (69 1-20) acres which I value at forty-seven hundred and fifty ($4,-750) dollars; the said Alice Maxey Thomas and husband H. E. Thomas, when they take possession of this land, which shall be on November 1st after my death, are to pay to my executor seven hundred and fifty ($750) dollars and hold this land during their lifetime, and then to their children; my said daughter Alice Maxey Thomas has never received any money from me. Said land shall not be liable for any debts they may contract.

"Item 5. I have given to my daughter Mrs. Mary D. Atkinson one house and lot on Grantland avenue, Nashville, Tennessee, valued at twenty-five hundred ($2,500) dollars. I will that she Mrs. Mary D. Atkinson have five hundred ($500) dollars to be divided equally between herself and her three children.

"Item 6. I will that Fred J. Page have two thousand ($2,000) dollars in notes or money, he having previously received one thousand ($1,000) dollars from me.

"Item 7. I will that W. T. Jordan have the fifteen hundred ($1,500) dollar note that I hold against him, and also five hundred ($500) dollars in money or notes, he having previously received one thousand ($1,000) dollars from me.

"Item 8. I will that J. L. Covington have two thousand ($2,000) dollars in money or notes, he having previously received one thousand ($1,000) dollars from me.

"Item 9. I will that all my personal property be sold for cash or on such terms as my executor thinks best, and the proceeds turned into the funds of my estate.

"Item 10.   After making the above bequests if there be any money or notes left, I wish it to be equally divided between my heirs.

"Item 11.   I will that my executor, on November 1st following my death, wind up all my estate.   He is to hold all notes, rent note included, with interest paid up to that date, and at that time he shall turn over all lands, notes and money as this will directs, and make a final settlement of my estate.

"Item 12.   It is my will and desire that my son John W. Johnson qualify as executor of my estate, and that he shall not be required to give bond, nor shall he receive compensation for work and labor done in the administration of my estate.

"In witness whereof, I have this day set my hand, this the 20th day of December, 1916.

"W. W. JOHNSON.

"Signed by the said W. W. Johnson, as and for his last will and testament, in the presence of us, the undersigned, who, at his request, and in his sight and presence, have subscribed our names hereto as attesting witnesses, the date above written.

"A. D. GENTRY.
"T. B. BENNETT."

On the same day on which the testator made his will, to-wit, December 20, 1916, he prepared a written explanation showing some reasons which moved him in making the will; the principal reason being, taking into consideration what he had done for his children in the past, he wished to make them equal in the final distribution of his estate.   He deemed this matter of so much importance that he went before a notary public on March 17, 1917, and acknowledged the explanation, "to have been signed

by him without fear or favor." This "explanation" is as follows:

"Triune Tennessee, December, 20th, 1916.

"To all whom it may concern:

"This is to show that I have this day made my last will and testament; I write this in case there is any contest over my will, to show that I have made as fair and just distribution of my property as I know how.

"Item 1. I give to John W. Johnson in my will one thousand dollars extra, because he has never received any money from me. He pays me as rent two hundred and fifty dollars per year rent, and board and washing, pays all my taxes, furnishes me good buggy and gentle horse to drive, furnishes me plenty best grade of coal for fuel, makes all necessary repairs, such as fencing, roofing and such other things, at his own expense.

"Item 2. I give to Pearl Johnson, wife of John W. Johnson one thousand dollars for services and kindness to me in my old age and sickness, said Pearl has been with me seventeen (17) years, and has been as faithful and as kind to me as one of my own daughters could possibly be.

"Item 3. I give to Alice Maxey Thomas one thousand dollars extra because she has never received any money from me. This thousand is counted to her in land I paid on Maxey's house three hundred and fifty dollars for which I make no charges.

"Item 4. I give to Mary D. Atkinson one house and lot on Grantland avenue, Nashville, Tenn., valued at twenty-five hundred dollars and five hundred dollars to be divided between her and her three children. I have also given and paid out for Mary D. Atkinson in various ways to the amount of four or five hundred dollars for which I make no charges, she being a widow with little children.

Johnson v. Covington.

"Item 5. My son James K. Johnson is to get in my will, three thousand dollars, some years ago I gave to James K. Johnson, one thousand dollars to start in business he lost this thousand and also one thousand he borrowed from John W. Johnson; on account of his bad luck in business and a wife and eight children, I make no charges against him for this thousand dollars.

"Item 6. About eighteen years ago I gave to J. L. Covington one thousand dollars, and in my will I have left to him and his wife two thousand dollars in money and notes and an equal share if there is any surplus left, after each gets his three thousand dollars.

"Item 7. Some twelve or fifteen years ago, I gave to Fred J. Page one thousand dollars, and in my last will he is to have two thousand dollars in money or notes, and after this two thousand is paid, if there be any surplus left, he is to share equally in it with the balance of my heirs.

"Item 8. W. T. Jordan is to have two thousand in money or notes according to my will; I gave him about twenty years ago one thousand dollars, and after he gets this two thousand and one thousand I gave him years ago, if there be any surplus, he is equally with the balance of my heirs.

"I, W. W. Johnson have been as just and fair in the distribution of my estate between my heirs as I know how to be. Signed and written by own hand, this, December 20th, 1916.                    W. W. JOHNSON.

"I have made my will on basis of three thousand to each heir; if there be any surplus left, it is to be divided equally among all my heirs."

The sixty-acre tract of land decreed to the children and grandchildren of W. W. Johnson, Jr., in the Page cause is composed of the fifteen-acre tract which W. W. Johnson, Jr., conveyed to his son, John W. Johnson, in 1902, and

forty-five acres out of the sixty-acre tract devised to said
John W. Johnson by item 3 of the will, both of which tracts
are lost to John W. Johnson by virtue of the Page de-
cree, with the exception that John W. Johnson is en-
titled to his one-seventh interest in said lands under the
will of his grandfather, W. W. Johnson, Sr.

Under this state of facts, what are the rights and equi-
ties of the respective parties in the estate of W. W. John-
son, Jr.?

The decree of the chancellor in this cause, which was
affirmed by the court of civil appeals, is as follows:

"I. That under the terms and provisions of the will
of his father, W. W. Johnson, Sr., and under decrees of
this court in the case of *W. W. Johnson and wife et al.* v.
*Fred J. Page et al.,* rule No. 4627, W. W. Johnson takes an
estate for and during the period of his natural life only
in the sixty acres of land referred to and described in the
pleadings; that his deed registered in book —, page —,
register's office of Williamson county, under and by which
he undertakes to convey fifteen acres of this land to John
W. Johnson in fee, did not pass title to more than his life
estate therein; that the alleged will of W. W. Johnson,
admitted to probate in and before the county court of
Williamson county, purporting to devise upon the con-
ditions therein specified to John W. Johnson the balance
of said sixty acres of land, approximately forty-five acres,
adjacent to said fifteen acres on the south, is ineffective to
pass title thereto; and this deed and will do not affect
the title of the remaindermen, the children of said W. W.
Johnson and his wife, Fannie A. Johnson, and the chil-
dren of Mrs. Fannie Lou Jordan, a deceased daughter, to

said sixty acres of land, but constitute clouds thereon which are hereby removed as such.

"II. That the title to the land conveyed to him by deed of the testator W. W. Johnson having failed, and the title to part of the land devised to him, subject to the conditions specified in the will, having failed, John W. Johnson may have his election whether he will decline to pay the $7,000, and renounce the devise of lands conditioned upon its payment; and in the event that he elects not to pay the $7,000 and renounces the devise of land, said John W. Johnson and his wife, Pearl Johnson, may claim the bequest of $4,000 and $1,000, respectively, and have same paid in full if there be sufficient assets, or ratably with other devises, should the assets be inadequate to pay all devises in full. In this event the remaining land, which is approximately seventy-six and one-fifth acres, becomes intestate property, and an asset of the estate for the payment of debts and devises.

"III. That, upon the other hand, if the said John W. Johnson elects to pay in said $7,000, he will take the devise of the balance of said land, approximately seventy-six and one-fifth acres, and will be entitled to have reimbursement for the value of the forty-five acres devised, which was lost to him by reason of the failure of title, at a valuation ascertained upon the basis fixed by the testator in his will, as of the testator's death, to be satisfied out of the shares, *pro rata,* of all devisees (including John W. Johnson and James K. Johnson) who participate in the division of the proceeds of the sale of the sixty acres, to the extent of the amount of the devise to such devises; but no devisee shall be required to contribute any pay more than his or her proportionate part of such loss, nor more than the amount of his or her devise under the will.

Devisees who do not directly participate in the division of the proceeds of the sale of the land, title to which failed, cannot be required to contribute to the loss—that is, Mrs. Pearl Johnson, Messrs. Jordan, Page, Covington, and Thomas cannot be required to contribute and the devises to them cannot be sequestered to make up the loss. The devises of those devisees liable for the loss sustained by reason of the failure of title to the land devised, to the extent of such liability, will be sequestered and subjected to the reimbursement of the devisee suffering the loss; and if necessary the value and amount of the devisee so liable may be ascertained by appropriate reference and proof.

"IV. John W. Johnson will be entitled to prove and establish claim against the estate of the testator, as a creditor, for breach of warranty and loss sustained by reason of the failure of title of the fifteen acres, which the testator undertook to convey to him by general warranty deed; and will be entitled to recover $750, the price paid therefor, together with such amount as any permanent improvements placed thereon by him, since the date of said deed and before the death of the grantor, may have permanently enhanced and increased the value of said real estate. Having been in possession and having enjoyed the use of said fifteen acres of land from the date of his purchase, he will not be allowed interest on the purchase price down to the death of the grantor; but being liable to the remaindermen for rents since the grantor's death, he will be allowed interest from that date.

"V. That John W. Johnson, having been in possession of and having enjoyed the use, benefits and usufructs of all of said land since the date of the testator's death in November, 1917, is liable for rent as follows:

"(1) To the remaindermen, owners of the sixty acres,

for rents thereof from testator's death less taxes which he may have paid.

"(2) To H. E. Thomas and wife and children for rents of the lands devised to them from the 1st day of November, 1918, at which date they were entitled to possession under the terms of the will.

"(3) And in the event that he elects not to pay the $7,000, and renounces the devises of realty referred to, to testator's estate for the reasonable rental of the seventy-six and one-fifth acres of land since the testator's death and of the lands devised to H. E. Thomas and wife and children from the testator's death to November 1, 1918.

"(4) And in the event he elects to pay in said $7,000 and to hold the devises of real estate, he will not be liable for rent thereon, but will be liable for interest on said $7,000 from the date at which same should have been paid under the terms and provisions of the will. This date will be ascertained and fixed after the election is made.

"VI. John W. Johnson will be allowed thirty days from the entry of this decree within which to elect under the options open to him.

"The court is of the opinion, and so adjudges and decrees, that the executor is entitled to recover judgment on the notes of J. L. Covington, F. J. Page and W. T. Jordan, if necessary to pay the debts and charges against the estate, but this question is reserved until the coming in of the report.

"All other matters reserved."

Numerous errors have been assigned by appellant, John W. Johnson, to the decree above set forth, the main contention being that the devisees and legatees, having accepted the provisions of the will in retaining the advancements set forth therein, and now insisting that they are

entitled to the other benefits conferred upon them by the will, are estopped from questioning the devise of the sixty-acre tract of land in item 3 of the will, and, in support of their contention, rely upon a line of authorities of which the case of *O'Bryan Bros.* v. *Glenn Bros.,* 91 Tenn., 106, 17 S. W., 1030, 30 Am. St. Rep., 862, is an illustration.

The general principle which appellant thus seeks to apply here is that—"One entitled to a benefit under an instrument, whether it be a will or a contract, if he claims the benefits of such instrument, he must abandon every right the assertion whereof would defeat even partially the provisions of the instrument. A party cannot occupy inconsistent positions, but will be confined to his election." Herman on Estoppel (Ed. 1886) 1177, quoted in *Railroad* v. *Iron Co.,* 118 Tenn., 194, 204, 101 S. W., 414, 417.

See, also, Herman on Estoppel, section 1028, p. 1156.

Upon the principle stated in the above-cited authorities (but conversely applied), it is held that one who accepts the benefit of a provision in his favor under a will is precluded from attacking the validity of the will. *Utermehle* v. *Norment,* 197 U. S., 40, 25 Sup. Ct., 291, 49 L. Ed., 655, 3 Ann. Cas., 520, and note, p. 525.

On the other hand, it is contended by the appellees that, under the modern authorities, the doctrine of forfeiture does not apply to one who elects to claim his own property which a testator has assumed to dispose of in his will, to the extent of compelling him to surrender all benefits under the will, but that, if he elects to retain his own property, he must compensate the disappointed devisee or legatee for the loss resulting from such election out of the property of the testator which the electing beneficiary takes under the will, so far as it is sufficient for the pur-

pose, but his obligation extends no further; that if the de-
vise or bequest intended by the will for the one so electing
is insufficient to compensate the disappointed devisee from
the loss resulting from such election, the electing bene-
ficiary will take nothing under the will, but that he is
entitled to whatever may remain of the benefits intended
for him, after compensation to the disappointed devisee
for the loss resulting from his election.

In our opinion, the rule relied upon by the appellees is
the better one, and the one supported by the weight of
authority. We quote from 1 Pomeroy's Equity Jurispru-
dence (4th Ed. 1918), as follows:

"Sec. 461. *Questions Stated.*—As I have already said in
the preceding chapter, the equitable doctrine of election
originates in inconsistent or alternative gifts, with the in-
tention, either expressed or implied, that one shall be the
substitute for the other. A court of equity, therefore, act-
ing upon the fundamental principle that he who seeks
equity must do equity, as explained in a former section,
declares that the donee is not entitled to both benefits,
but to the choice of either—to an election between them.
There are two cases, differing in their circumstances, but
depending upon this one broad principle, which are to be
considered, although the first of them only is usually in-
cluded under the name 'election'; the second will more
properly be treated of under the title of satisfaction. (1)
The owner of an estate, in an instrument of donation, either
will or deed, uses language with reference to the property
of another, which, if that property were his own, would
amount to an effectual disposition of it to a third person,
and by the same instrument gives a portion of his own es-
tate to that same proprietor whose rights of ownership he

had thus assumed to transfer. Under these circumstances, an obligation rests upon that proprietor either of relinquishing (at least to the extent of indemnifying those whom he disappoints) the benefit conferred on him by the instrument, if he asserts his own inconsistent proprietary rights, or, if he accepts that benefit, of completing the intended disposition, by transferring to the third person that portion of his own property which it purports to effect. There is a particular branch of this case in which the doctrine of election may arise, not because a party has attempted to transfer property not his own, but where a testator has attempted to dispose of some of his own property by means of a will ineffectual for that purpose. (2) If the person to whom, by an instrument of donation, a benefit is given, possesses at the same time a previous claim against the donor, and an intention appears that he shall not both enjoy the benefit and enforce the claim, the same equitable doctrine requires the donee to elect between his original and his substituted rights; the gift being designed as a satisfaction of the claim, he cannot accept the former without renouncing the latter. It is to the first of these two cases that the doctrine of 'election,' technically so called, applies, which will be examined in the present section.

"Sec. 462. *Rationale of the Doctrine.*—The essential facts presenting an occasion for the doctrine of election are; A. gives to B. property belonging to C., and by the same instrument gives to C. other property belonging to himself. The equitable doctrine·upon these facts, briefly is: C. has two alternatives: (1) He may elect to take under the instrument, and to carry out all its provisions; he will then take A.'s property, which was given to him, and

B. will take C.'s property. (2) He may elect against the instrument. In that case he will not wholly forfeit the benefits intended to be conferred upon him; he must surrender only so much of such benefits as may be necessary to compensate B. for the disappointment he has suffered by C.'s election to take against the instrument."

"Sec. 467. *Election in Opposition Thereto.*—The only difficulty arises when the party upon whom the condition rests elects to take against the will. In such case he retains his own estate, which the will had assumed to bestow upon the other person, but of course cannot claim, to its full extent, at least, the testator's property which the will had given to himself. What is, then, the import of the tacit condition? It does not say he must take in conformity to the will, or else forfeit the testator's property given by it to him. If that were the effect of the condition, the forfeited property would either descend to the testator's heir, or be embraced in the residuary clause of the will, and the third person intended by the testator to be benefited would receive nothing. The condition therefore says that he shall confirm the will, or else, out of the testator's property given to him by the will, he shall make compensation to the third person, who is disappointed by his choice. The tacit condition imposing the obligation of an election upon one party contrives a means of satisfying the substantial rights of both parties, by compelling full equity to be done. This import of the condition imposed upon the donee who is to make the election is well stated in the following conclusions reached by Mr. Swanston, after a review of the authorities, in his well-known note to *Gretton* v. *Haward*, viz.:

"1. That in the event of an election to take against the

instrument, courts of equity assume jurisdiction to sequester the benefits intended for the refractory donee, in order to secure compensation to those whom his election disappoints.

"(2) That the surplus after compensation does not devolve, as undisposed of, but is restored to the donee, the purpose being satisfied for which alone the court controlled his legal right.

"Sec. 468. *Compensation the Result.*—In this general examination of the doctrine there remains one more question to be considered. In any case for an election, where the party upon whom the necessity devolves elects to take in opposition to the instrument of donation, and therefore retains his own estate which had been bestowed upon the third person, does he thereby lose all claim upon or benefit of the donor's property given to himself? or does he only lose such part of it or so much of its value as may be needed to indemnify the disappointed third person. In adjusting the equities between himself and the third person, must he necessarily surrender to that person the entire gift made to himself? or must he simply make adequate compensation? Few, if any, of the cases have required a decision of this question; and what has been said concerning it has chiefly been by way of argument and of judicial *dictum.* The rule may be regarded, however, as settled by the weight of judicial opinion very strongly in favor of compensating the donee who is disappointed by an election against the instrument. If the gift which he takes by way of substitution is not sufficient in value to indemnify him for that which he has lost, he of course retains the whole of it."

And in section 472 of the same volume it is said that—

"It is sufficient if the dispositions of the instrument, fairly and reasonably interpreted, exhibit a clear intention of the donor to bestow upon B. some estate, interest, or right of property, which is not the donor's but which belongs to A., and at the same time to give to A. some benefits derived from the donor's own property. It is immaterial, however, whether the donor knew the property not to be his own, or erroneously conceived it to be his own; for in either case, if the intention to dispose of it clearly appears, the necessity for an election exists."

Judge STORY, in his Equity Jurisprudence (13th Ed., 1886), vol. 2, at section 1085, says:

"The fair result of the modern leading decisions is that in such a case there is not an absolute forfeiture, but there is a duty of compensation (at least where the case admits of compensation) or its equivalent; and that the surplus after such compensation does not devolve upon the heir as a residuum undisposed of by the will but belongs to the donee, the purpose being satisfied for which alone courts of equity will control his legal rights."

As early as 1859, it was stated in the fourth American edition of Jarman on Wills, vol. 1, p. 386, that—"The strong current of the authorities, particularly those of a recent date, is in favor of the principle of compensation" (as against forfeiture).

The foregoing rule was recognized by this court in *Colvert* v. *Wood,* 93 Tenn., 454, 25 S. W., 963. The reporter's headnote is misleading, and is not supported by the opinion. In that case the court said: ·

"The true statement of the doctrine is that election applies when property of the testator is attempted to be given to the devisee or legatee at the same time the testator

148 Tenn.—6.

attempts to give away the property of the devisee or legatee to another by will. The devisee or legatee, in all such cases, must elect whether to claim his own property or that given him by the testator; and, when he elects to take the one, he surrenders the other, so far as is necessary to make up the share of any devisee or legatee that may thus be diminished or destroyed by his election against the will."

The difficulty is in applying the rule to the particular facts of the cause.

It is stated in the brief of counsel that the testator had very little property other than that specifically mentioned in his will.

One of the questions that arises in the cause is this: Are the bequests to testator's sons-in-law to be treated as bequests to his daughters, in the case of W. T. Jordan as a bequest to his grandchildren?

After a careful consideration of the evidence, we are of the opinion that the testator intended these bequests as charges against his children. The purpose was to equalize his estate among his heirs, and carrying out this intention all who share in the forty-five acres should contribute to John W. Johnson in order to maintain this equality. For example, while he bequeathed $2,000 to Mr. Page, he intended it as a gift to Mrs. Page in that he charged it to her share, and so on as to the other gifts to his sons-in-law, whose wives were living.

In the instrument executed contemporaneously with his will he made the following concluding statement, to-wit:

"I, W. W. Johnson, have been as just and fair in the distribution of my estate between my heirs as I know how to be."

Johnson v. Covington.

And after signing said instrument he wrote the following: "I have made my will on basis of three thousand to each heir; if there be any surplus left, it is to be divided equally among all my heirs."

The gifts were to his heirs, those to whom he was morally obligated. In his well testator stated that some years ago he gave to each of his sons-in-law, Page, Covington, and Jordan, $1,000, but Mrs. Page and Mrs. Covington testified, without contradiction, that he gave a thousand dollars to each of his daughters. We quote from Mrs. Covington's testimony as follows:

"Q. Prior to your father's death, and at any time after you became grown, and ceased to be a member of his household there, did he give you any property or make you any advancements of any substantial amount?

"A. He gave me a thousand dollars soon after I was married, and also gave me a milch cow and a machine.

"Q. That was the thousand dollars mentioned in the will?

"A. Yes, sir."

On cross-examination:

"Q. As a matter of fact, your father did not give you anything in his will, did he?

"A. Well, we were to get $3,000, I think, each one of his girls.

"Q. He put it in your husband's name, though, didn't he?

"A. In my husband's name?

"Q. Yes, ma'am?

"A. In the will?

"Q. Yes, ma'am?

"A. I guess it was that way.

"Q. You and your husband both regarded it as the same thing?

"A. Yes, sir.

"Q. He did give you $1,000 after you married, and yet in his will he said he had given that to your husband, but you all counted it as the same thing?

"A. Yes, sir; and I feel like what is his is mine."

Two former wills of the testator, executed in 1900 and 1902, respectively, were introduced in evidence, and in said wills he spoke of said. gifts as having been made to his daughters. In later wills he spoke of those gifts as having been made to his sons-in-law. In his last will the devise of the sixty-nine and one-half-acre tract of land was "to my daughter Alice Maxey Thomas and husband H. E. Thomas." In his "explanation" he says.

"I give to Alice Maxey Thomas one thousand dollars extra because she has never received any money from me. This thousand is counted to her in land."

In his last will he gave to J. L. Covington $2,000, while in his "explanation" he says:

"I have left to him (referring to Covington) and his wife two thousand dollars in money and notes."

We are convinced that the testator did not intend said bequests as independent gifts to his sons-in-law. Evidently he had not contemplated the complex situation that has arisen, but entertained the idea that his children would acquiesce in his will.

In a note to *Ireland* v. *Dyer*, 133 Ga., 851, 67 S. E., 195, 26 L. R. A. (N. S.), 1050, 18 Ann. Cas., 544, many authorities are cited in support of the rule that a gift to a son-in-law during the life of the daughter will be treated as a gift to the daughter, and, upon principle, we see no reason why this rule should not apply in the case of a bequest. This rule, however, would not apply to the Jor-

dan children for the reason that Mrs. Jordan was not living when the bequest was made to her husband, and there is nothing in the record to indicate that the bequest to the husband was intended as a charge against the children.

After all, each case must depend upon its particular facts, and the bequest will be treated as a gift to the daughter only where such intention appears from the record.

We conclude, therefore, that all six interests, to the extent that they take under the will, must contribute in order to compensate John W. Johnson for his loss of the forty-five acres. The gifts referred to in the will, and which the record shows were made many years prior to its execution, cannot be treated as bequests because they were outright gifts, and were not received by the parties by virtue of the will. They were only referred to in the will in explanation of the testator's intention of making an equal distribution of his estate, and of showing that he intended them as advancements. This likewise applies to the house and lot in Nashville conveyed by testator to Mrs. Atkinson.

Another question involved is the value of the forty-five acre tract. The testator, in his will, valued the one hundred twenty-one and one-fifth acres "to John W. Johnson" at $12,000. He did not value either of the tracts separately. It appears that the improvements are on the forty-five-acre tract, and it may be worth largely more than the other tract. In our opinion, John W. Johnson is entitled to be compensated for the actual value of the forty-five acre tract to be ascertained as of the date of the death of the testator. The actual or market value is what it takes to compensate him for his loss.

The decree of the chancellor will be modified so as to fix

Johnson v. Covington.

the value of the forty-five-acre tract as above indicated; also so as to decree that Messrs. Page, Covington, and Thomas contribute to the disappointed devisee, John W. Johnson.

The costs to date will be divided, John W. Johnson paying one-half and the estate of W. W. Johnson, Jr., paying the other half.

With the foregoing modifications the decree of the chancellor will be affirmed, and the cause will be remanded for further proceedings.