HURT v. LONG.

(*Jackson.* June 11, 1891.)

90 445
110 267

1. BILL OF REVIEW. *Not maintainable in Chancery Court to review decree of Supreme Court.*

The Chancery Court from which cause was appealed, has not jurisdiction, after the entry of final decree in the Supreme Court, to review that decree upon a pure and simple bill of review, either for "error apparent" or, it seems, for "new matter." (*Post, pp. 447–449.*)

Cases cited and approved: Wallen v. Huff, Thompson's Cases, 21; Cox v. Breedlove, 2 Yer., 499; Wilson v. Wilson, 10 Yer., 200; Anderson v. Bank, 5 Sneed, 661.

2. SAME. *Same. Defense by plea proper. Demurrer.*

And effectual defense may be made to such bill of review, either by demurrer, or by plea setting up the original decree accompanied by copy of original record. (*Post, pp. 447, 448.*)

3. RES ADJUDICATA. *Effect of decrees as to infants.*

Infants are concluded to the same extent as adult parties by the adjudications of the decrees of a Chancery Court, and are entitled to same proceedings for correction of errors therein, and to none other. Infants are entitled, however, to longer time than adults, under the savings of statutes in their favor, to institute proceedings for correction of errors. (*Post, pp. 449–454.*)

Cases cited and approved: Winchester v. Winchester, 1 Head, 460; Kindell v. Titus, 9 Heis., 727; Ridgely v. Bennett, 13 Lea, 206; Grimstead v. Huggins, 13 Lea, 728; Kelley v. Kelley, 15 Lea, 194; Vaccaro v. Cicalla, 89 Tenn., 63; Allen v. Shanks, *ante, p.* 359.

Cited and distinguished or disapproved: Talbot v. Provine, 7 Bax., 509; Livingston v. Noe, 1 Lea, 55; McCown v. Moores, 12 Lea, 635; McGavock v. Bell, 3 Cold., 512.

Cited and overruled: Davidson v. Bowden, 5 Sneed, 129.

4. CHANCERY COURT. *Jurisdiction to sell infants' lands for their benefit.*

Chancery Court has, independent of statute, inherent jurisdiction, inclusive of and more comprehensive than that provided and regulated

by statute, to make, ratify, or consent to sale of infants' lands for their benefit. Such sales are not necessarily invalid by reason of failure to comply with the statutory requirements on that subject. (*Post, pp. 459–461.*)

Code construed: §§ 4054, 4071 (M. & V.); §§ 3323, 3340 (T. & S.).

Cases cited and approved: Thompson *v.* Mebane, 4 Heis., 370; Talbot *v.* Provine, 7 Bax., 509; Porter *v.* Porter, 1 Bax., 301; Lancaster *v.* Lancaster, 13 Lea, 132; Hunt *v.* Glenn, 11 Lea, 16; Kirkman, *ex parte*, 3 Head, 517.

5. SAME. *Same. Application for sale by testamentary guardian.*

Although under the statute the regular guardian of the infant must make the application for sale of infant's lands, still a sale contracted by a testamentary guardian without authority, and afterward confirmed as an advantageous one by decree rendered in suit brought by such testamentary guardian against his ward for that purpose, is valid even upon direct attack. (*Post, pp. 461–463.*)

Code construed: § 4055 (M. & V.); § 3324 (T. & S.).

Case cited and approved: Elliott *v.* Blair, 5 Cold., 194.

6. SAME. *Same. Appointment of guardian ad litem.*

And such sale is not invalid, even upon direct attack, by reason of the fact that guardian *ad litem* for the infant defendant was appointed by the deputy of the complainant guardian, who was Clerk and Master of the Court. (*Post, pp. 456, 457.*)

7. SAME. *Same. Purchaser's petition to have purchase-price retained to meet incumbrance. Guardian ad litem.*

And such sale is not invalid, even upon direct attack, by reason of the fact that the purchaser obtained relief upon his petition to have the purchase-price retained in court to meet an alleged incumbrance upon the lands without appointment of guardian *ad litem* to answer that petition for the infant, the testamentary guardian having made defense, and the infant being represented by a competent guardian *ad litem* in the principal cause. Such relief may be properly granted after confirmation of sale upon mere petition and without institution of an original suit. (*Post, pp. 463, 464.*)

Cases cited and approved: Pearson *v.* Johnson, 2 Sneed, 580; McMinn *v.* Phipps, 3 Sneed, 196; Spence *v.* Armour, 9 Heis., 169; Brittain *v.* Cowen, 5 Hum., 316; Cowan *v.* Anderson, 7 Cold., 291; Masson *v.* Swan, 6 Heis., 450; Brown *v.* Severson, 12 Heis., 390; Scott *v.* Porter, 2 Lea, 225.

8. SAME. *Same. Purchase by administrator of ancestor's estate.*

And such sale is not invalid by reason of the fact that purchaser was administrator of the estate of the infant's ancestor, and that fact was not disclosed in the proceedings. (*Post, pp. 464, 465.*)

9. SAME. *Same. Guardian not required to make deed with covenants.*

Guardian effecting sale of his ward's lands without authority, subject to approval of the Chancery Court, will not be required, upon the Court's approval and confirmation of such sale, to execute deed with covenants to the purchaser. Decree divesting and vesting title is sufficient in such case. (*Post, pp. 457, 458.*)

---

FROM MADISON.

---

Appeal from Chancery Court of Madison County. A. G. HAWKINS, Ch.

E. L. BULLOCK, TURLEY & WRIGHT, McCORRY & BOND for Hurt.

HAYNES & HAYS and PITTS & MEEKS for Long.

SNODGRASS, J. The bill in this case is brought to review a decree of this Court, rendered at its last term.

Respondent, adopting the ancient practice (Daniel Ch. Pr., 1732; Hicks' Manual, Addenda, § 350*a*), plead the decree sought to be reviewed, and demurred against opening the *enrollment*, exhibiting the original record with the plea.

The defense, while unnecessarily voluminous, was not improper, but, under our practice, a demurrer would have been sufficient, as, upon such demurrer, the original decree and pleadings in the case in which it was pronounced would be before the Court for inspection to determine alleged errors.

The Chancellor sustained the demurrer and plea, and complainant appealed, and assigned errors.

The decree is correct.

It has been long settled that a bill of review must be filed in the Court in which the decree was pronounced (*Anderson* v. *Bank*, 5 Sneed, 661, 662); and longer that no bill of review will lie in this Court where, under the principle announced, it could alone lie, if at all. *Cox* v. *Breedlove*, 2 Yer., 499; *Wilson* v. *Wilson*, 10 Yer., 200. In the former case, the reasoning of which was approved in the latter, it was held that "when a cause has been re-examined in the Supreme Court in any of the modes authorized by law—as, on appeal, or on appeal from a Chancellor's decision, or a bill of review of original case pending in the Chancery Court, or on appeal in error or writ of error—unless a rehearing shall be allowed during the term, the whole remedy is exhausted, unless fraud has intervened in obtaining the decree, or some new equity which would authorize the party to file his original bill in the Court of Chancery to set aside the decree."

These authorities were not deemed conclusive of the question as to the right to file a bill of re-

Hurt *v.* Long.

view in the Chancery Court to review a decree of the Supreme Court, and so that exact question was made in a case at Knoxville in 1847. It was there held that no bill of review lies in the Chancery Court to review a decree of the Supreme Court. *Wallen* v. *Huff*, Thompson's Cases, 21.

This is obviously correct, as among the numerous methods for the correction of errors of law and fact committed in the inferior Courts, the appeal is the last and final one; and it could not be, on any ground, assumed that this might be tried, and then all the others, practically included in this, might be tried again. This practice would be productive of intolerable evil, and would make litigation endless. But it is insisted that no such rule applies to a minor, and that such litigant may always file a bill and set aside a decree upon showing that it was "an improper one against the minor, although the same was merely erroneous, and was not gained by fraud or collusion or surprise;" and for this a quotation from the opinion of Judge Nicholson, in *Talbot* v. *Provine*, 7 Bax., 509, is cited.

The quotation made by Judge Nicholson was in reference to a point made in that case that Provine was agent for complainant when certain leases were made and confirmed, and the decrees "procured by a fraudulent concealment of the fact of such agency," and was used for no more than authority that the decrees might be set aside "for

29—6 P

fraud in their procurement." This he shows on page 511 of the opinion referred to.

So used and applied it was law. It was not intended to mean (and if it had been, would have been erroneous) that a minor can set aside a decree for any other reason, or upon any other method than that of other suitors, save and except the allowance of time in favor of disability.

In the case of *Livingston* v. *Noe*, 1 Lea, 55, the quotation made by Judge Nicholson was again used, and the English and other authorities sustaining it cited; and again, in *McCown* v. *Moores*, 12 Lea, 685, on a bill filed by a minor through his guardian to review a decree for mistake, the same authorities were cited, and minors attempting to review decree in that case were assumed to stand on different ground from other suitors in respect to their right to impeach and review a decree by original bill for mistake of fact, and a demurrer (on what grounds filed not shown) was overruled and a mistake of fact corrected.

Here, again, these authorities were cited, and assumed to govern in this State, as it was said they had before been assumed to do in the case of *McGavock* v. *Bell*, 3 Cold., 512.

These cases all *ignored* the origin of the rule under the English practice, where the methods of review were not so numerous and easy of resort as in this State, under our statutes, including those saving in all instances the rights of persons under disability, and giving them, after removal of such

disabilities, the same rights as existed without such saving in favor of persons *sui juris*, to correct, in the same methods as the latter, any and all errors committed against minors or others under disability; and the cases mentioned went too far in statement of the principle to be applied under our law. They are inconsistent with a great number of other cases in this State, from *Winchester* v. *Winchester*, 1 Head, and others of that class (including *Kindell* v. *Titus*, 9 Heis.; *Ridgely* v. *Bennett* and *Grimstead* v. *Huggins*, 13 Lea; *Kelley* v. *Kelley*, 15 Lea), down to the last utterances of this Court in similar cases, two of which—*Vaccaro* v. *Cicalla*, 5 Pickle, and *Allen* v. *Shanks*, *ante*, p. 359 —expressly disavowed such principle, and held that minors, attempting to review decrees, stood upon the same footing and must resort to the same method as other suitors.

Of like character of case with those thus limited was that of *Davidson* v. *Bowden*, 5 Sneed, 129, in which it was, among others, assumed as a ground for vacating a decree at the instance of a purchaser thereunder, that the evidence did not authorize it; and this was thereafter cited as an authority to the effect that where a minor's land had been sold, in a proceeding for that purpose, any other Court, or the same, in a collateral attack, could look to the evidence on which the decree was made, and declare that decree void if the evidence did not justify it. In other words, that the jurisdiction of the Court to make it

depended upon the evidence. This, of course, was not law, but the case gave much trouble to the profession and the Court. The latter, without at once determining that it was erroneously decided, struggled against its effect by assuming that the bill by the purchaser in that case was a "direct attack" on the decree. See Judge Cooper's head-note to the case, p. 129.

But in practice it was treated as applying only to cases of direct attack, and was never properly recognized as authority for any other. In the Kindell case, in 9 Heiskell, as in many others before and since, the jurisdictional doctrine it announced was expressly repudiated, and at Nash-ville, in 1877 (MS. opinion, case of *Wallace* v. *Mason*), it was declared overruled.

It seems that it had been theretofore, as it was thereafter, deemed superfluous to say in terms that the case was not authority, in view of the fact that it had been impliedly overruled in so many cases holding that jurisdiction of a case did not depend and could not depend upon proof. It of course depends upon parties and subject-matter as stated in the pleadings, and a Court would have jurisdiction to hear a case so brought within it, and determine it, whether there was or not any proof on which to found a decree for complainant. Whether a particular decree could or should be rendered was not a jurisdictional question. The right to hear and determine, which is jurisdiction in the sense considered, is one thing;

the decree to be rendered upon evidence offered is another. If the jurisdiction exists, the decree might be erroneous upon the evidence, but not void. So, neither as to pleadings nor effect of proof in the original case, do minors stand on any different footing, when they seek to impeach it, than other suitors.

A different doctrine would be a very dangerous one indeed, and of infinite trouble, for it would authorize every Court, and impose upon every Court, the duty of repassing on the facts and law of every case in which a minor had been involved, where he impeached it as erroneously decided; and, worse than this, the second decree in the case brought by a minor to impeach the first would have no more sanctity than that impeached. He might file a bill to have this again tried as erroneous, and, failing in this, to review the third, and so on until his minority terminated. Besides, no title would be secure in any case derived through a sale in which a minor was a party; for, even in case of innocent purchaser, that is a defense to be both plead and proven, and minority often lasts until purchaser and witnesses to prove it are dead and such evidence lost.

In any and all aspects it is a doctrine rejected by the good sense of the profession, and wholly unnecessary, ruinous, and inapplicable under our system of law, broad and wise as it is in the preservation of other full and adequate remedies for all the wrongs and enforcement of all the rights of minors.

Passing these questions, it is insisted that the decree is void for fraud in its procurement. If it is so alleged and proven, of course the decree is void, as all decrees are open to such questioning, and by all suitors, where such case is alleged and shown by clear, definite, specific allegation of facts and circumstances making it fraudulent, and these allegations sustained by proof. 6 Lea, 183.

In this case there is no fraud alleged or proven.

The original case, in which the decree now sought to be impeached was rendered, is briefly this, as stated in the memorandum opinion of the Court then delivered:

"R. A. Hurt is the executor of the will of Mrs. F. M. Hurt, and guardian of her only child, Frances M., without bond, by the will. As executor he supposed he had power to sell a tract of land in Madison County, and contracted and did sell to T. C. Long for $15,000. Finding that the land descended from the father and not from the mother, and that he was not authorized to make title, he filed his bill, alleging, for various reasons set out in the bill, it was manifestly to the interest of his ward that the sale contracted to Long be confirmed.

"Hurt was also Clerk and Master of the Chancery Court; his deputy appointed the guardian *ad litem* at the rules, who, in due course, filed an answer, admitted the contract of sale, and submitted the question of confirmation to the Court. Proof was taken, which showed that the guard-

ian's statement in respect to the propriety of the sale was true, and showed circumstances that made the arrangement very proper.

"On the hearing the Chancellor correctly held that it was to the minor's interest, ratified the terms, and confirmed the sale; and directed that the cash purchase-money be paid into Court, and notes taken for the balance, bearing interest, Hurt, the guardian, to give the purchaser a deed.

"It appears that the guardian went off to Europe and remained absent some six or eight months. After his return, Long filed a petition in the cause, in which he alleged that at the time he made the trade Hurt said there was some claim against the property due Mrs. DeBerry, executrix of A. DeBerry, from whom his ward's father had bought the farm, which had been partially compromised; that Mrs. DeBerry, who was to release her claim and join in the deed from Hurt to him, had refused to do so; that he was unwilling to pay for the land in the face of her claim; that, anticipating no trouble under his contract with Hurt, he had taken possession of the farm, which was in bad condition, and made considerable improvements; that Mrs. DeBerry had filed her bill, asserting a lien amounting to several thousand dollars, and he insisted that the guardian discharge this, or that the Court retain the fund for its satisfaction.

"Hurt answered the petition, admitting that Mrs. DeBerry had agreed to settle her matters

with him, but that on his return from Europe she had repudiated her agreement, of which he notified Long; that .he had prepared a deed because directed by the Court, and tendered it to Long, who refused it; that he was now in condition to manage the farm with advantage to his ward, and for sundry reasons set out it would be manifestly to her interest not to sell the place. Long filed an amended petition, in which he stated that Mrs. DeBerry was willing to release the land and look to the purchase-money. He denied that Hurt had tendered him such a deed as the decree required; insisted that none was filed (nor is there any in this record), and suggested that the requirement of the bond by the Court had caused the guardian to change his mind. Hurt filed his answer, re-iterating his statements, but developing nothing new. Proof was taken on the petitions and answers, and the Chancellor decreed that the sale was proper, and confirmed it, directing that the title be vested in the purchaser, and that the guardian and executor execute him a deed with proper covenants. He also decreed that the money be paid into Court, and retained to answer whatever claim Mrs. DeBerry might establish; that the fund arising be paid over to the guardian, taking the usual bond. Hurt appeals, assigning several errors:

"*First.*—That the proceedings are irregular and invalid, because the guardian *ad litem* was appointed by a Deputy Clerk, Hurt himself being the Clerk.

There is nothing in this objection. If the appointment made is of a proper person, as he is, and the Chancellor afterwards ratifies the appointment by permitting him to act as the representative of the infant, the irregularity, if any, may not be assigned as error.

"*Second.*—That the original decree is erroneous, because Hurt had no power to sell, and the Court no power to ratify and order complainant to make a deed, its only power being to order a sale. As to this the Chancellor did have the power to ratify the sale made by the guardian. That the sale was open and above suspicion is shown by clear testimony, and under circumstances that free it from all cloud. The Chancellor confirmed a private sale made by the guardian. Jurisdiction over the sale was exercised, and there was no particular irregularity in exercising it.

"*Third.*—The only question that this Court had any serious debate about was the character of the deed which the Chancellor required the complainant to make. He seems himself to have been in doubt as to the kind of deed, and subsequently directs that he make a deed with the proper covenants. But this is not material; the Chancellor's decree divesting the title renders a deed from the guardian unnecessary, and that portion of the decree was superfluous. If the deed were made without sufficient covenants, the purchaser, by supplementary proceeding, could come in and assert his right in equity to stop the fund which he

himself paid in without relying on covenants. The Chancellor has properly decreed that the fund be retained to satisfy the outstanding incumbrance, if any is established, so that the purchaser is thoroughly protected by the decree.

"The Court is unanimously of opinion that the executor and guardian cannot be required to execute a deed with any covenants. The result is, the decree is correct except as to the deed. The costs will be paid out of the fund, and the cause is remanded for the execution of the decrees as to the purchase-money."

The bill in the case now being considered makes no pretense that the property sold did not bring a full and fair price, as it was there held to have done, and shows otherwise no fraud or injury in the purchase. The sale was made and the confirmation thereof procured by the guardian and relative of the ward, an officer of Court, and a gentleman of the highest standing; so much trusted by the mother of the minor that he was by her made testamentary guardian, without bond, a trust that nothing in that record or this indicates was misplaced. The ward was represented by a guardian *ad litem*, faithful and efficient.

The evidence upon which confirmation was procured was, in part, made by near relatives, including the present next friend of the complaining minor. This made it appear that it was clearly to her interest to have the land sold; that the farm was old, wearing out, and, at best, bringing

but a rental of six hundred dollars, out of which taxes and repairs (and insurance, if any) must be paid. The necessary system of rental farming was shown, by which it appeared that on arrival of age of the ward she would receive a probably worn-out farm, greatly depreciated in value. The $15,000 would bring a net interest of $900. These were facts then, and remain so still. The decree was proper on the merits, and on the merits would be again so decided were they now before us; and, notwithstanding the elaborate and ingenious statements in complainant's bill, nothing seriously affecting the merits is alleged. The money received for the land was retained by the Court, and the ward entirely protected. The fact that it is held to answer the DeBerry lien makes no difference, and could not possibly injure the ward, as the land itself, if the lien exists, is liable. In no event, therefore, was she, or could she, have been injured. The complaint now is purely technical.

There is nothing in the allegation as to fraud on the part of the purchaser in concealing the alleged knowledge of Mrs. DeBerry's intention to assert this lien.

But it is insisted that this Court had no jurisdiction to make the decree; that in a proceeding to sell the land of a minor under the Act of 1827, or under Code, Ch. 3, §§ 3323, 3340, the provisions of these chapters of the Code should be literally observed, and this was not, as a fact, done in the case in which the decree was pronounced.

If this were true, it would be immaterial, be-
cause the decree would nevertheless be not void
under the principles hereinbefore announced and
authorities cited, preceding that of the case itself,
which has now become conclusive of such question
here.   This Court, in the original case, determined
that it did have jurisdiction, and that question is
therefore settled.

Waiving this, however, the jurisdiction is un-
doubted.   It was not a proceeding under the Act
of 1827, nor to make a sale by the Chancery
Court under power dependent upon the statute.
Neither statute conferred additional power on the
Chancery Court, or embraced all the inherent
power it had when the Code was adopted.

The Act of 1827, while enumerating Chancery
Courts (by reference of § 3204 to § 3266 of the
Code, which include parts of this and former Act
amended by it), among others which might exer-
cise such jurisdiction, added nothing to the juris-
diction of that Court, which, before and since, and
before and since Code provisions referred to, had
the jurisdiction to control and sell and to consent
to the sale of the real estate of a minor where
it was to his interest.   *Thompson* v. *Mebane*, 4
Heis., 370 ; *Talbot* v. *Provine*, 7 Bax., 509 ; *Porter*
v. *Porter*, 1 Bax., 301.

The last case intimates—what is doubtless true—
that the Chancery Court, by virtue of its inherent
power, might, in a proper case, decree a sale con-
trary to the provision of § 3340.   Elsewhere it is

said this power of the Chancery Court extends to the validation of a *void* or *voidable* sale when for the interest of an infant, and is well settled. *Lancaster* v. *Lancaster*, 13 Lea, 132.

The disability which the law imposes upon a minor is for his benefit and not for his injury. When, therefore, his incapacity to dispose of his estate would result injuriously, a Court of Equity will make or confirm a disposition of it. Take, for instance, the case where there is a boom or sudden rise in real estate. An unprecedentedly large price is offered, and can be obtained only if the sale is made at once. The minor, or one representing him—a guardian—makes such contract, which is, of course, subject to approval of the Court and ineffectual without it, and then makes application to the Court to confirm the action and divest the title. Every thing done in good faith, and the evidence that it is to his advantage clear, the Court would do the minor great injustice not to confirm it. He would be thus compelled to lose this advantage, and that, too, as the result of a Court's determining his disability to his injury; or, take the present case: upon its facts confirmation was a clear equity, which this minor had a right to demand of the Court. *Hunt* v. *Glenn*, 11 Lea, 16; *Kirkman, ex parte*, 3 Head, 517.

But it is said this guardian was only a testamentary guardian by claim of right, and was not even so in fact, as he was appointed by a mother, while under our Code only a father had the right

to appoint such a guardian (§ 2492). Suppose
that is true, it does not affect the question. The
land belongs to neither testamentary nor other
guardian; nor does either have to make deed or
receive the money for the property without
special bond. It is not because of the guard-
ian's interest in either capacity that he could file
a bill to sell the land, even under the Act of
1827 or Code provisions cited. It is only because
he stands in such relation to person or property
(for the Code does not say whether such *regular*
guardian shall be that of person or property, and
such different trusts might exist in different per-
sons) that upon him is devolved the duty of filing
such bill under the law. In reference to pro-
ceedings under the statute, he was specially desig-
nated because the Legislature deemed that he
would best know of the necessity, and from him
should come the application. But, so far as that
question is involved here, it was settled in the case
now sought to be reviewed that the testamentary
guardian might make that application; for the bill
there showed he was such, and the opinion shows
the Court so understood, and he is thus referred
to in it.

Whatever may be said about proceeding under
the statutory power, where it alone exists, about
which it is not necessary now to say any thing,
as the question does not arise, we see no reason
why any one claiming to be testamentary guardian,
and who—as he had—has been permitted to qualify

as guardian by the County Court, may not properly make to the Chancery Court, for the minor, such application as was made in that case, repeating again that he neither had any interest in the land nor could take the money, it being brought, as it only could be, into the custody and control of the Court, where it may be legally held or put into proper hands upon proper bonds.

Such a bill might as well be filed by such alleged representative of the minor as any other. He would stand, in fact, in any event, in the attitude of a next friend. *Elliott* v. *Blair*, 5 Cold., 194.

Two other objections alleged against the jurisdiction in that case we deem it proper to notice in conclusion, and they are, that after the sale was approved, the minor was made defendant to Long's petition to hold the fund to meet the DeBerry lien, and was represented by her guardian, who entered her appearance and made defense. It is said that the petition of Long to have the money he had paid and was to pay for the land retained in Court, to protect him as purchaser against the DeBerry lien, should have been an original bill, because confirmation of sales after adjournment can only be set aside for fraud, accident, mistake, or other sufficient ground, which the party was deprived of the opportunity of pleading or relying upon in the original case without fault or negligence on his part. 2 Sneed, 580; 3 Sneed, 196; 9 Heis., 169.

Long's application did not fall within this rule. It was not an application to set aside or modify the decree. It did not seek or accomplish either as a result. The relief he sought was incidental in that case to protect himself as to the fund in Court. The guardian *ad litem* already appointed would, without additional answer, represent the minor. But exactly what was done was sustained upon full consideration by this Court in the original case. It was held not to be such an irregularity as would defeat Long's right to this incidental relief upon a direct attack by appeal, much less would it do so of course in this collateral attack. If it were an original suit to appropriate purchase-money, as claimed, the regular guardian might have defended and entered the appearance of his ward. 5 Hum., 316; 7 Cold., 291; 6 Heis., 450; 12 Heis., 390; 2 Lea, 225.

If he treated the petition as a bill for defense, and did enter the appearance of his ward and defend, it effected the same result as though Long's petition had been called or been in fact an original bill (the name is immaterial, as a suit may be commenced by either, Code, § 4312) and was at most a mere irregularity not affecting the merits.

Again, it is said that Long was the administrator of A. B. Hurt, the father of the minor complainant, from whom the land was derived, and this fact was not disclosed in the original suit; and that this suppression and concealment

made the decree fraudulent under the case of *Talbot* v. *Provine* before cited. There is nothing in this. The estate of A. B. Hurt, as represented by Long, was in nowise involved, and the suggestion or proof of that fact, or its non-suggestion or proof, or its suppression, was in nowise material to the merits of that controversy. There was no litigation about that estate in which Long's connection with it was or could have been, under the facts therein appearing or in this bill stated, material. Consequently, that fact was not important there or here.

There is no error in the decree of the Chancellor, and it must be affirmed and the bill dismissed at cost of complainant.