J. H. BAILEY

*v.*

ALICE LADD SCHUBERT et al.

(*Knoxville,* September Term, 1957.)

Opinion filed June 6, 1958.

Frank L. Flynn and R. M. Child, Knoxville, for appellant.

McCluen & Cooley, Rockwood, for appellees.

Mr. Justice Burnett delivered the opinion of the Court.

The bill in this case was filed on May 15, 1956, as a bill in the nature of a bill of review, seeking to have the

court correct an error alleged to be apparent on the face of the record in a previous Chancery cause tried in that court and being correctly identified by reference to the previous style of the case and the number, etc.

The decree in the case sought to be reviewed and corrected was where it is alleged that an error was made of using fourteen hundred feet rather than one hundred and forty poles. Thus it is obvious that there would be some discrepancy in the length of the distance of the call. It is likewise alleged that certain calls as set forth in the decree of the previous suit did not meet. This previous case was a suit in ejectment filed by Alice Ladd Schubert and others against W. A. Bailey, Wesley Pickel, and James Huffine and wife, on September 28, 1932. The defendants Bailey and Pickel claimed one tract of land subject to the suit and defendants Huffine and wife claimed another tract subject to the suit.

The final decree in this previous suit was entered by the Chancery Court of the County on December 7, 1934, and covered the property in question here. The now alleged errors were made in this decree. The final decree in this suit was appealed to the Court of Appeals by parties other than those through whom the present complainant claims. Bailey and Pickel (those through whom the present complainant claims) made no exception to the decree of 1934 and did not appeal. The Court of Appeals heard this case and affirmed the decree of the Chancellor on March 28, 1936, and entered a decree awarding a certain tract to the defendants herein, Bailey and Pickel, describing said tract fully.

Petition for *certiorari* was denied by this Court on October 10, 1936. No *procedendo* was returned to the

Chancery Court of Roane County until May 12, 1956, or approximately 20 years after the matter was finally determined by the Court of Appeals.

The present suit, as said above, was filed three days after the return of this *procedendo* and of course it is rather apparent, though the record does not show it, that the one who was checking the title discovered what they now allege was an error in that decree and as a result had the *procedendo* returned to the trial court. This present suit alleged that the complainant was a successor in title to the defendants Bailey and Pickel in the suit of 20 years ago and as said it sought to correct an error in the description of the property made in that former case.

There were some 15 or 20 or more parties made defendant to this present litigation. After various amendments had been made to the present bill the complainant on January 9, 1957, took a *pro confesso* against all the defendants. This was not a rule day and there was no term of the Chancery Court of Roane County in session at the time. Thus this *pro confesso* having been taken against all the defendants on their subsequent motion to the Chancellor was set aside without taxing the costs at the time but leaving this question subject to the final determination of the lawsuit.

Before the motion to set aside the *pro confesso* was made or at approximately the same time, two of the defendants who had a *pro confesso* taken against them filed an answer. These two defendants, City of Kingston, and three parties who filed a sworn affidavit as to their reasons or excuses for allowing the *pro confesso* to be taken against them. The individual said that she

was old and was sick and did not have a chance to get to court and her sisters who were parties were very old, up near 80, and similar excuses. The City of Kingston alleged in its affidavit which was sworn to by the Mayor of the City of Kingston that service had not been on the Mayor and the Mayor had no knowledge of the suit until after the *pro confesso* was had. It was on these allegations that the Chancellor set aside the *pro confesso*.

After the *pro confesso* was set aside all defendants demurred to this bill. The demurrer set forth: (a) there is no such error in the former decree; (b) that the bill does not affirmatively show due diligence on the part of the complainants; and (c) that the bill was not brought within three years from the time of pronouncing the decree in the former suit and therefore it will not be maintained. The Chancellor sustained the demurrer as a whole and this appeal resulted. Briefs have been filed, arguments heard and we now have the matter for determination.

In the first instance complaint is very vigorously made of the fact that the Chancellor set aside the *pro confesso* and allowed a defense. In the first instance it is to be noted that under Sections 21-901, 21-903, and 21-905, T.C.A., various and sundry things are provided as to when a Clerk & Master may enter a *pro confesso,* may set it aside and do various and sundry other things within the duties as Clerk & Master.

The *pro confesso* here was not set aside by the Clerk & Master but was set aside by the Court. This was a judicial action in which the Court or the Chancellor exercised his sound discretion under the facts and circumstances before him in setting aside this *pro con-*

*fesso.* Such a discretion is sound when exercised, not arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances of law, and directed by the Chancellor's reason and conscience to a just result.

When the *pro confesso* is entered by the Clerk & Master as it was here it is essential that every prerequisite of the statute be shown to exist because the Clerk & Master is a mere ministerial officer and cannot act except under the conditions prescribed by the statute. Be this as it may the Chancellor here exercised his sound discretion under the circumstances at the time the matter was presented to him and having done so, and there being no showing that this discretion as above defined has been abused, his judgment in setting aside this *pro confesso* is affirmed.

It is next very vigorously and ably argued that the Chancellor erred in considering and sustaining the demurrer after answers had been filed. As noted above there were only two answers filed and in each instance affidavits were filed setting forth why these parties who had filed answers had permitted the *pro confesso* to be taken against them. None of the many other defendants who were in a large majority filed any pleading at all except the demurrer which was filed herein. Of course normally it is absolutely necessary that pleadings be filed in a logical sequence and particularly as set forth in Gibson's Suits in Chancery at Section 239, of Volume 1, of the Fifth Edition of this work. Under the circumstances here though when it is shown that on the face of the bill that the bill does not comply with the statutory as well as the judicial requirements at the time within

which to be filed, and when it is shown that of the 38 defendants only some two or three have answered, it is entirely proper for the Chancellor to use his discretion and good judgment in allowing the answers to be withdrawn and for a demurrer to be filed. This is more especially true when it is shown that all questions involved in the lawsuit are met by the demurrer and the matter may be disposed of more expeditiously that way than some other. We think therefore that the Chancellor has not committed error in allowing the demurrer under the facts and circumstances in this case to be filed.

Next it is insisted that the Chancellor erred in sustaining the demurrer. This of course goes to the real heart of the lawsuit. Our Code provides (Section 27-203, T.C.A.) in effect that no bill of review should be filed except within three years from the time of "pronouncing the decree", and then certain saving clauses are made for those under disability. The obvious argument is made here that since the *procedendo* did not go back from the Court of Appeals in 1936 to the Chancery Court until three days before the present suit was filed that then there was no final decree in the Chancery Court of Roane County against which a bill of review might be sought to review the errors apparent in that decree. This argument of course is made to meet the rule that:

"The bill must show on its face, affirmatively, that it is filed within the time allowed by the statute, and until this is done the complainant has no standing in Court." Gibson's Suits in Chancery, 5th Edition, Sec. 1291.

Section 1289 of the same work (Gibson's Suits in Chancery) very clearly defines when a decree becomes final

or to which a bill of review may be filed. In none of these works is anything said about the question that is here being argued because obviously the bill of review is only filed to a final decree of *nisi prius* court from which no appeal has been taken. Because, obviously, under a long line of decisions of this Court for over 100 years, a bill of review cannot be maintained to review a decree of this Court or the Court of Appeals for error apparent or a new matter. *Hurt v. Long,* 90 Tenn. 445, 16 S.W. 968; *Murphy v. Johnson,* 107 Tenn. 552, 64 S.W. 894; *Fourth & First National Bank v. Harris,* 9 Tenn.App. 301, 305, and many others. A reading of the opinion in *Hurt v. Long, supra,* sets forth the reasons of why no bill of review is allowed to a decree of this Court. In short it is because the parties have appealed from the decree of the trial court and should in the appellate courts point out any errors in the decree of the trial court and then if the appellate court makes a decision in its judgment and decree this may be rectified by petition to rehear. Our rules clearly and simply provide for an opportunity for the parties to show wherein such an error had been made. When it is not done in this way there is no remedy for it. The parties at interest in the question involved in this lawsuit raised no question about the decree of the Court of Appeals of some 20 years ago. They were parties to the suit and are presumed to know what that decree provided for. It really then makes no difference whether or not a *procedendo* was sent back at the time or 20 years later. As confirmatory of what we have just said, see Section 1292 of the Fifth Edition of Gibson's Suits in Chancery.

As said in *Murphy v. Johnson, supra*: (64 S.W. 895.)

"The decree on the *procedendo* was but an entry of the decree of this court on the minutes of the chancery court without alteration, and being so it is, for the purposes of the present proceeding, to be regarded as the decree of this court,—nothing more, nothing less. So regarded, it is beyond the reach of a bill of review, either for error apparent or for newly-discovered evidence." Citing authorities.

So it seems to us under the authorities and under the Statute that clearly the Chancellor was correct in sustaining the demurrer to the bill. If this were not true no litigation would ever be settled. No one having property through a decree of the court would ever feel safe if after any length of time some question might be raised as to the legality of the decree through which he obtained this property and it then shown that the Court erred in so decreeing when the parties at the time had and exercised all rights of appeal. Clearly thus under the Statute and under the doctrine of laches this decree should be sustained.

■■ Lastly, it is insisted that the Chancellor erred in the taxation of costs. There are various statutes that might be somewhat applicable to this question, such as Section 21-612, T.C.A., 21-1301, T.C.A., and finally Section 21-1302, T.C.A., and the rule of court particularly based on the last section wherein the rule that it is discretionary with the Chancellor in trying these lawsuits as to where the costs are placed. Normally of course under the statute and under reason and fairness the party who loses the lawsuit is taxed with the costs. This brings about, too, the question of sometimes a party may lose the lawsuit and yet it is through the other party's

fault that certain things were done when the court in its discretion taxed the costs against the person who was at fault. Clearly under the facts and circumstances as developed here and the law as it is the Chancellor was eminently within his discretion in taxing the costs against the complainant who instituted this lawsuit.

The result is that the decree of the Chancellor must be affirmed in all things.