Neil McDADE et al., Appellants,

v.

Everest McDADE et al., Appellees.

Court of Appeals of Tennessee,
Middle Section.

Feb. 25, 1972.
Certiorari Denied by Supreme Court

Sept. 5, 1972.

Shumacker & Thompson, Spears, Moore, Rebman & Williams, Chattanooga, for appellants.

Charles J. Gearhiser, of Stophel, Caldwell & Heggie, Chattanooga, for appellees.

## OPINION

TODD, Judge.

This litigation originated in 1951, and its various phases have been before this Court and the Supreme Court on previous appeals. The present appeal is from an order entered by the Chancellor on November 30, 1970, and containing the following provisions:

"3. The motion of the attorney ad litem to correct the error apparent on face of the record with respect to three $28,500.00 notes issued to Grace Everest McDade, Neil McDade and Dorothy McDade Ferguson should be and hereby is sustained in accordance with the opinion of this Court filed on November 9, 1970. Specifically, *the decree of this Court filed on May 20, 1966, is corrected* with only the note payable to Everest McDade by Clint McDade & Sons, Inc., in the amount of $28,500.00 being reinstated as of the date of original cancellation on February 10, 1950. The reinstated note of Everest McDade will be dated October 31, 1970, and will have a face value of $28,500.00, plus interest will be added to the face value at the rate of six percent per annum, compounded annually, from the date of the original note, September 30, 1948, to the date of the new note, October 31, 1970, and the new note will bearthe same terms and conditions as the original note other than the due date on the new note will be changed to allow payment by Clint McDade & Sons, Inc., in three equal, annual installments of principal and interest commencing on January 1, after completion of payments on the existing judgment of this Court. *The $28,500.00 notes payable to Neil McDade, Grace Everest McDade and Dorothy McDade Ferguson by Clint McDade & Sons, Inc., that were erroneously reinstated in the* *record are hereby cancelled, set aside and rendered null and void.* (Emphasis supplied.)

■ This record contains no decree of the Chancery Court dated May 20, 1966. In response to the writ of certiorari, the Clerk and Master has certified to this Court that no such decree appears of record in his office. It must therefore be conclusively presumed that the decree of the Chancery Court of May 20, 1966, which the Chancellor sought to correct by the above quoted decree was non-existent.

This record does disclose that the minutes of the Chancery Court for the October term, 1966, contain a certified copy of a twelve page decree of the Court of Appeals dated May 20, 1966, with Procedendo of the Clerk of the Court of Appeals commanding that the judgment of the Court of Appeals be executed by further proper proceedings. Said decree of the Court of Appeals contains the following:

"9. *The $28,500.00 notes of Clint McDade and Sons, Inc., payable to Everest McDade, Neil McDade, Grace Everest McDade, and Dorothy McDade Ferguson are hereby reinstated* and the corporation may make periodical payments to the holders of the said notes provided an equal amount is paid on each note at the same time and further provided that none of the quarterly payments on the judgments heretofore referred to in this order are in arrears." (Emphasis supplied.)

It must therefore be presumed for purposes of this appeal that the above quoted order of the Chancellor undertook to correct the decree of the Court of Appeals dated May 20, 1966, which was on the Chancellor's minutes, and not to correct a decree of the Chancellor as stated therein. This conclusion is reinforced by reference to the "Motion for Evidentiary Hearing" and "Supplemental Brief and Affidavit" filed by the Honorable Charles J. Gearhis-

er, attorney ad litem for Everest McDade, wherein he states:

"It further appears to the attorney ad litem that the 'reinstatement' of three other $28,500.00 notes resulted from a mistake by the Appellate Court which thereafter went undetected."

.    .    .    .    .    .

". . . the attorney ad litem wants the record in this case to clearly reveal certain results found by the attorney ad litem on November 10, 1970 in reviewing the files of the Clerk of the Court of Appeals in the McDade case at Knoxville, Tennessee.

"Examination of the records in Knoxville reveals the following:

.    .    .    .    .    .

"(4) The Court of Appeals opinion of 1958 with respect to the $28,500.00 notes was in error, an error apparent on the face of the record, in the following respects: . . .."

The said "Brief and Affidavit" then quotes from and refers to numerous parts of the evidentiary record which was considered by the Court of Appeals in reaching the conclusions set out in its decree of May 20, 1966.

The conclusion is therefore inescapable that the "Attorney Ad Litem" applied to the Chancellor and secured a revision of the above-quoted decree of the Court of Appeals based upon his (the attorney's) review of the evidence before the Court of Appeals, and his (the attorney's) opinion that the Court of Appeals reached an erroneous conclusion of fact therein.

On the general subject of the power of trial courts, especially Chancellors, to revise the judgments of appellate courts, there are numerous Tennessee decisions.

In Hurt v. Long, 90 Tenn. 445, 16 S.W. 968 (1891), the Supreme Court said:

"It has been long settled that a bill of review must be filed in the court in which the decree was pronounced; (An-

derson v. Bank, 5 Sneed, (37 Tenn.,) 661, 662;) and longer, that no bill of review will lie in this court where, under the principle announced, it could alone lie, if at all, (Cox v. Breedlove, 2 Yerg., (10 Tenn.,) 499; Wilson v. Wilson, 10 Yerg., (18 Tenn.,) 200.) In the former case, the reasoning of which was approved in the latter, it was held that, 'when a cause has been re-examined in the supreme court in any of the modes authorized by law, as an appeal, or an appeal from a chancellor's decision, or a bill of review of original case pending in the chancery court, (or on appeal in error or writ of error,) unless a rehearing shall be allowed during the term, the whole remedy is exhausted, unless fraud has intervened in obtaining the decree, or some new equity, which would authorize the party to file his original bill in the courts of chancery to set aside the decree.'

"These authorities were not deemed conclusive of the question as to the right to file a bill of review in the chancery court to review a decree of the supreme court, and so that exact question was made in a case at Knoxville in 1847. It was there held that *no bill of review lies in the chancery court to review a decree of the supreme court*. . . .

"This is obviously correct, as, among the numerous methods for the correction of errors of law and fact committed in the inferior courts, the appeal is the last and final one, and it could not be, on any ground assumed that this might be tried; and then all the others, practically included in this, might be tried again. This practice would be productive of intolerable evil, and would make litigation endless. . . ." (Emphasis supplied.) 90 Tenn., pp. 448, 449, 16 S.W., p. 969.

In the same case, the Supreme Court declined to make an exception for minors and said:

". . . If the jurisdiction exists, the decree might be erroneous upon the evi-

dence, but not void. So neither as to pleadings nor effect of proof in the original case, do minors stand on any different footing, when they seek to impeach it, than other suitors.

"A different doctrine would be a very dangerous one indeed, and of infinite trouble, for it would authorize every court, and impose upon every court, the duty of repassing on the facts and law of every case in which a minor had been involved, where he impeached it as erroneously decided; and, worse than this, the second decree in the case, brought by a minor to impeach the first would have no more sanctity than that impeached. He might file a bill to have this again tried as erroneous, and, failing in this, to review the third, and so on until his minority terminated. . . ." 90 Tenn., p. 453, 16 S.W., p. 970.

Again, in Murphy v. Johnson, 107 Tenn. 552, 64 S.W. 894 (1901), it was said:

"The decree on the *procedendo* was but an entry of the decree of this court on the minutes of the chancery court without alteration, and, being so, it is, for the purposes of the present proceeding, to be regarded as the decree of this court,—nothing more, nothing less. So regarded, *it is beyond the reach of a bill of review, either for error apparent or for newly-discovered evidence.* Hurt v. Long, 90 Tenn. 445, 16 S.W. 968; Wallen v. Huff, 1 Tenn.Cas. 4." 107 Tenn., p. 556, 64 S.W., p. 895. (Emphasis supplied.)

In Wolfe v. Hammer, 202 Tenn. 170, 303 S.W.2d 716 (1956), the Supreme Court reiterated the foregoing principles and said:

"(5, 6) *When a judgment or decree of the Court of Appeals or this Court is pronounced* and entered of record, the aggrieved party is privileged under the rules of the Court to file a petition to rehear for the purpose of correcting errors. Where any such judgment or decree has become final, *it will not be sub-ject to review by either party except for fraud, accident or mistake. A bill of review will not lie to reconsider issues of fact which were part of the original cause,* even though the decision may have an adverse effect upon the rights of the aggrieved party which was not fully recognized or anticipated by him or his counsel at the time of its rendition. The contention of counsel in this regard is not sustained by the record, even if it could be considered as sufficient ground to support a bill of review. In the case at bar it cannot be so considered.

"We gave full consideration to the petition for *certiorari* and denied it. There was no petition to rehear. The bill in the instant case was not filed until almost two years after the petition for *certiorari* was denied. *In these circumstances a bill of review cannot lie to secure a revision of the original decree,* or set it aside as null and void. For us to recognize such a practice would result in the utmost confusion and uncertainty as to when the rights and interests of litigants have been finally and conclusively adjudicated." 202 Tenn., pp. 178, 179, 303 S.W.2d, p. 719. (Emphasis supplied.)

In Bailey v. Schubert, 203 Tenn. 660, 315 S.W.2d 249 (1957), the Supreme Court said:

" . . . Because, obviously, under a long line of decisions of this Court for over 100 years, a bill of review cannot be maintained to review a decree of this Court or the Court of Appeals for error apparent or a new matter." (Citing authorities) 203 Tenn., p. 668, 315 S.W.2d, p. 253.

To the same effect are Whitson v. Johnson, 22 Tenn.App. 427, 123 S.W.2d 1104 (1939); Fourth & First National Bank v. Harris, 9 Tenn.App. 301 (1928); and Clemmons v. Haynes, 3 Tenn.App. 20 (1926).

■ Appellee insists that the foregoing decisions are inapplicable because the

present proceeding was not a bill of review, but simply an application to correct an error apparent upon the face of the record under T.C.A. § 20–1513, which is as follows:

"20–1513. *Mistake apparent in record.*—Every mistake apparent on the face of the record may be corrected by the court at any term after final judgment, at the discretion of the court, and if it appears to the appellate court to which said record has been certified on appeal that a mistake has apparently been made in the transcribing of said record, the appellate court may remand the record to the clerk below for correction of the mistake. [Code 1858, § 2878 (deriv. Acts 1855–1856, ch. 70, § 2); Shan. § 4598; Code 1932, § 3722; Acts 1969, ch. 325, § 1.]"

There is nothing in this statute which even remotely suggests that, after a case has been removed from an inferior court to an appellate court by appeal, and after the appellate court has entered a detailed definitive decree reversing the action of the inferior court, the inferior court may thereafter revise the action of the appellate court upon the basis of a report of an attorney as to his examination of the voluminous record on file in the appellate court and his opinion of what action the appellate court should or should not have taken.

A review of the decisions annotated with the foregoing statute fails to disclose any authority for the position of appellee.

Appellee cites Polk v. Pledge, 52 Tenn. (5 Heisk.) 371 (1871), however in that case it was the Supreme Court which corrected its own decree, and that to make the decree conform to the opinion of the Supreme Court. The Court said:

"By section 3932, the opinions of the Judges of the Supreme Court are recognized as part of the record of the cause. The omission in the decree rendered at the April Term, 1868, is obvious, when the papers in the cause and the opinion of the Court are looked to. We find

sufficient on the face of the record to amend by, and to enable us to correct the mistake, and have entered now the decree which by mistake was omitted." 52 Tenn., pp. 374, 375.

Appellee cites Taylor v. State, 189 Tenn. 467, 225 S.W.2d 822 (1949), wherein the Supreme Court corrected the mistake of its own Clerk, based upon the opinion of the Supreme Court which was recognized as a part of the record.

Appellee cites Easley v. Tarkington, 64 Tenn. (5 Baxter) 592 (1875) wherein the Supreme Court sustained the action of the Chancellor in declining to follow that part of a Supreme Court decree which was not supported by the opinion of the Supreme Court and which adjudicated matters not before the Court in that case. In that case, the Supreme Court said:

"It is certainly true that a final decree upon any question involved in a litigation is a final adjudication of that question, and this is so whether that particular question has or has not been discussed in the opinion of the court. But where the decree contains an adjudication of a question neither involved in the litigation nor discussed in the opinion, this court will treat so much of the decree as a mistake apparent on the face of the record, and at any time after final judgment it may be corrected or expunged. Code, sec. 2878. And this upon proper proceeding, must be the fate of the clause of the decree in question here." 64 Tenn., pp. 594, 595.

Appellee's brief states:

"There was no issue raised by the appellants at any time that the three notes in question in this case should be reinstated."

If, indeed, the three notes in question were in no manner involved in the issues presented by the pleadings and decided by this Court in its former decree, and this fact affirmatively appears from the record in this Court, the holding of Easley v. Tar-

kington, supra, might well afford appellee some relief. However, there is no such showing in the proceeding. The decree of the Chancellor makes reference to no such disparity between the pleadings and the decree, and appellee's brief makes no reference to any pleading which will support such a proposition.

■ The record in this appeal is limited to those matters selected by counsel, and none of the pleadings are included from which it might be determined whether or not the three $28,500.00 notes were a part of the issues to be decided by this Court upon the former appeal. Appellee insists that it is the duty of appellant to have all necessary matters included in the record on appeal. This is not necessarily so. Where the appellee sought and obtained the extraordinary and unusual action of revision of a decree of this Court, it was incumbent upon him to have the record show specifically the grounds upon which relief was granted and the portions of the record supporting such grounds.

The decree of the Chancellor and the pleadings of appellee, quoted supra, are devoid of any reference to the former pleadings as ground for taking action under the authority of Easley v. Tarkington, supra. On the contrary, every indication is that the action was based upon a report of counsel's examination of the former record of testimony augmented by additional testimony of appellee not included in the former record.

The question naturally arises as to a re-examination of the voluminous record of former appeals in the archives of this Court. If this Court adopted the practice of searching through its archives for material to support or refute the contentions of litigants who have neither referred to nor produced such material, the work of disposing of appeals would be interminable.

■ Any matter within the archives of this Court of which judicial knowledge should be taken must be properly plead, presented to the lower Court, and brought before this Court by specific reference or other proper method. Until attention is called to specific portions of the record which invalidate a decree of this Court, such decree will be presumed valid and no search will be made by this Court for grounds of invalidity.

Under the record on this appeal, the Chancellor was in error in the attempted revision of the decree of this Court. The above quoted paragraph of the Chancellor's decree is therefore reversed and vacated.

Appellants also complain of the action of the Chancellor in his order of May 7, 1970, as follows:

"(1) Charles J. Gearhiser is appointed attorney ad litem for Everest McDade to examine the record, make such investigation as he deems proper, and then report to the court: (a) Whether or not, in his opinion, grounds exist for the liquidation of Clint McDade & Sons, Inc.; and, if so, (b) If he will undertake representing Everest McDade's minority stockholder's interests on a contingent fee basis."

The decree of the Court of Appeals of May 20, 1966, provided:

" . . . Upon remand Everest McDade shall have a special guardian appointed by the Chancery Court of Hamilton County and such guardian shall be the only person authorized to attend stockholders meetings of Clint McDade and Sons, Inc., or of Southland News Company, Inc., prior to the liquidation thereof, and vote any stock owned by Everest McDade.

"11. The Chancery Court, upon remand of this cause, shall appoint a special guardian for Everest McDade, which guardian should be a mature, successful business man and unrelated and unconnected financially or socially with any of the parties to this litigation. The special guardian shall have the sole authority and power or right to attend stockholders meetings and vote the shares of stock

of Everest McDade in Clint McDade and Sons, Inc., or Southland News Company, Inc. However, such special guardian for Everest McDade shall have no more right, power or authority than any ordinary stockholder in any corporation, and the officers, directors and agents of Clint McDade and Sons, Inc., shall not be restrained, enjoined, hindered, prohibited or interfered with in the operation of the corporate affairs and any orders of such a nature heretofore entered in this cause at any time are hereby declared null and void and of no effect, except the special guardian for Everest McDade, in a new cause of action, may exercise any privileges ordinarily afforded to a stockholder of a corporation by the laws of the State of Tennessee."

The record reflects that on February 17, 1970, the special guardian was directed to seek the services of special counsel in connection with possible liquidation of Clint McDade and Sons, Inc.; and, according to a memorandum opinion of the Chancellor, no such special counsel was ever procured by the special guardian. This is advanced as grounds and justification for the appointment of the attorney ad litem who initiated the attempt to correct the error of the Court of Appeals, discussed supra.

Under the unequivocal terms of the decree of the Court of Appeals, quoted supra, only one fiduciary was authorized to act for the incompetent party. The Chancellor had the undoubted authority to select and replace the person selected to so serve. There was therefore no occasion to appoint a second fiduciary to act independently of the special guardian. The perils of such duplicitous procedure are only too evident from the unfortunate results reached in the present case.

If, for any valid reason, the Chancellor was dissatisfied with the performance of the special guardian, he had, and has, the unquestioned discretion to remove him and appoint a successor. T.C.A. § 34-417.

The Chancellor had and has the unquestioned authority to direct and control the activities of the special guardian for the best interest of the ward. Such authority should be exercised directly upon the guardian, and not by circumvention.

It was therefore error for the Chancellor to appoint an attorney ad litem independently of the function of the special guardian.

The order of the Chancellor dated November 16, 1970, also provided:

"1. The motion to act upon the report of the attorney ad litem should be and hereby is granted, with Charles J. Gearhiser of the firm of Stophel, Caldwell & Heggie being appointed as attorney ad litem and guardian ad litem for the purpose of filing an appropriate liquidation proceedings as to Clint McDade & Sons, Inc., on behalf of Everest McDade, the ward of the Court and minority stockholder of Clint McDade & Sons, Inc."

This record discloses that the advisability of liquidating Clint McDade & Sons, Inc., depends to a large degree if not entirely upon the existence or non-existence of liability of said corporation upon the three $28,500.00 notes which the Court of Appeals "reinstated" and which the Chancellor undertook to eliminate. Since the disposition of the present appeal will leave undisturbed the liability of said corporation on all of said notes, the recommendation of the attorney ad litem and the resultant decision of the Chancellor to liquidate the corporation do not necessarily represent the most prudent course of action.

Accordingly, the above quoted paragraph 1 of the Chancellor's decree is likewise reversed and vacated, without prejudice, however to further instructions to the special guardian, or his successor, regarding conduct of the affairs of the corporation for the best interest of the ward.

For the reasons stated, the quoted portions of orders of the Chancellor dated May 7, 1970 and November 30, 1970 are

reversed and vacated and the cause is remanded for further proceedings consistent with this opinion and former opinions and decrees of this Court.

The costs of this proceeding, both in Chancery and in this Court, are adjudged against the estate of Everest McDade, for whose benefit the Chancellor undertook the actions herein invalidated, and such costs will be paid by the special guardian out of the funds coming into his hands as such.

Reversed and remanded.

SHRIVER, P. J., and PURYEAR, J., concur.